DURIE TANGRI LLP
RAGESH K. TANGRI (SBN 159477)
rtangri@durietangri.com
JOSEPH C. GRATZ (SBN 240676)
jgratz@durietangri.com
ANNIE A. LEE (SBN 328802)
alee@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:     415-236-6300

DURIE TANGRI LLP
ALLYSON R. BENNETT (SBN 302090)
abennett@durietangri.com
953 East 3rd Street
Los Angeles, CA 90013
Telephone:    213-992-4499
Facsimile:     415-236-6300

Attorneys for Defendant
INSTAGRAM, LLC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ALEXIS HUNLEY, et al., | Case No. 21-CV-03778-CRB |
| Plaintiffs, | **DEFENDANT INSTAGRAM, LLC'S NOTICE OF AND MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| INSTAGRAM, LLC, | |
| Defendant. | Date:    August 20, 2021 |
| | Time:    10:00 a.m. |
| | Ctrm:    6, 17th Floor |
| | Judge:   Honorable Charles R. Breyer |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

PLEASE TAKE NOTICE THAT on August 20, 2021, in Courtroom 6 on the 17th floor of the

3 above court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Instagram, LLC

4 ("Instagram"), by and through its attorneys of record, will and hereby does move the Court pursuant to

5 Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint for failure to state a claim

6 upon which relief can be granted.  This motion is based on the pleadings and papers on file in this action,

7 the following memorandum of points and authorities, and any further papers, evidence or argument as

8 may be submitted in connection with this motion.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF AND MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 21-CV-03778-CRB

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL BACKGROUND ...............................................................................1

        A.      Plaintiffs' public Instagram accounts and Instagram's embed tool ....................1

        B.      How embedding works .......................................................................................3

                1.      A user's browser retrieves HTML from a remote server and processes that
                        HTML to generate the webpage on the user's screen. ...............................3

                2.      When content is embedded (including content embedded from Instagram),
                        the HTML causes the user's browser to retrieve files from third-party
                        servers, not the website's own servers. ...................................................4

III.    ARGUMENT .......................................................................................................6

        A.      Because Plaintiffs have brought only secondary liability claims, Instagram can be
                liable only if Plaintiffs can plausibly allege that the third-party websites that
                embedded their copyrighted content directly infringed their copyrights...........................7

        B.      Plaintiffs' allegations of embedding do not constitute direct infringement under the
                Ninth Circuit's "Server Test". .............................................................................7

                1.      The Server Test ....................................................................................8

                2.      The "Server Test" Bars Plaintiffs' Claims ...........................................9

        C.      Leave to amend would be futile. ........................................................................10

IV.     CONCLUSION...................................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Broad. Cos. Inc. v. Aereo, Inc.*,
573 U.S. 431, 455 (2014)............................................................................................7

*AmerisourceBergen Corp. v. Dialysist West, Inc.*,
465 F.3d 946 (9th Cir. 2006) ....................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................6

*Azadpour v. Sun Microsys., Inc.*,
No. c06-03272, 2007 WL 2141079 (N.D. Cal. July 23, 2007)..............................11

*Bauer v. Tacey Goss, P.S.*,
No. C 12-00876 JSW, 2012 WL 2838834 (N.D. Cal. July 10, 2012) ..................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................6

*Nakada + Assocs., Inc. v. City of El Monte*,
No. EDCV161467GWSPX, 2017 WL 2469977 (C.D. Cal. June 2, 2017) ...........9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ..........................................................................*passim*

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .....................................................................................7

*Sweaney v. Ada County*,
119 F.3d 1385 (9th Cir. 1997) ................................................................................11

*Totally Her Media, LLC v. BWP Media USA, Inc.*,
No. CV1308379ABPLAX, 2015 WL 12659912 (C.D. Cal. Mar. 24, 2015) ........9

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .....................................................................................2

**Statutes**

17 U.S.C. § 101...............................................................................................................8

17 U.S.C. § 106.........................................................................................................7, 8

ii

NOTICE OF AND MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 21-CV-03778-CRB

## I.    INTRODUCTION

Plaintiffs are photographers who posted photographs on their public Instagram accounts. Plaintiffs admit they granted Instagram a license to display their copyrighted photographs.  They therefore cannot sue Instagram for direct copyright infringement, and they bring no such claim.  Instead, they bring *secondary* liability claims against Instagram based on an Instagram feature that allows third parties to "embed" Instagram posts in their websites.  Third parties use that feature by including instructions that cause users' browsers to load a portion of the Instagram website "embedded" within the third party's web page.

Plaintiffs' claims fail because secondary liability cannot exist without a direct infringer.  Plaintiffs affirmatively have alleged facts that establish that the third-party websites do *not* directly infringe Plaintiffs' copyrights under binding Ninth Circuit authority.  Over a decade ago, the Ninth Circuit established what has become known as the "server test," which provides that an internet company can be found to directly infringe a copyright owner's rights *only* if it hosts and transmits the copyrighted material from its *own* servers.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007). Plaintiffs here have alleged that the accused third parties neither host the embedded content on their own servers nor transmit that content to users from their own servers.  Instead, Plaintiffs have alleged that *Instagram*'s servers host and transmit the allegedly infringing content.  Under the server test, then, the third-party websites cannot be direct infringers.  (And Instagram, of course, cannot be a direct infringer because, as Plaintiffs concede, Instagram has a license to display the photographs.)  Plaintiffs' claims against Instagram for secondary liability are thus legally barred and, based on the admissions in their own Complaint, incapable of amendment.  Plaintiffs' Complaint against Instagram asserting secondary liability claims should be dismissed without leave to amend.

## II.    FACTUAL BACKGROUND

### A.    Plaintiffs' public Instagram accounts and Instagram's embed tool

Instagram provides two profile options for its users:  private profiles and public profiles.  A private profile, and the posts on that profile, can be viewed, shared, and commented on only by a user's approved "followers"—other Instagram users they have chosen.  A post on a *public* profile, by contrast, can be viewed by anyone.  A user can switch their profile from public to private, or vice versa, at any

1   time.

2          All Instagram account holders, regardless of whether their profile is public or private, must agree

3   to Instagram's Terms of Use in order to open an account and use the platform.  Complaint ("Compl.") at

4   ¶ 41.  By agreeing to those terms, each user grants Instagram a nonexclusive license to publicly

5   reproduce and display the content the user uploads and posts to their account.  *Id.*; *see also* Declaration of

6   Allyson R. Bennett in Support of Motion To Dismiss Complaint, Ex. 1 ("When you share, post, or

7   upload content that is covered by intellectual property rights (like photos or videos) on or in connection

8   with our Service, you hereby grant to us a non-exclusive, royalty-free, transferable, sub-licensable,

9   worldwide license to host, use, distribute, modify, run, copy, publicly perform or display, translate, and

10  create derivative works of your content (consistent with your privacy and application settings).").[1]

11         Since 2013, Instagram has offered an "embed" feature that gives users and third parties a

12  technological tool to easily make Instagram posts appear on another webpage.  Compl. ¶¶ 33–34.  Only

13  posts on a ***public*** Instagram account can be embedded; posts on private accounts cannot be embedded.

14  *See id.* ¶ 35 ("To embed a photo or video, the coder or web designer adds an 'embed' code to the HTML

15  instructions from a ***public*** Instagram account.") (emphasis added).

16         Plaintiff Hunley asserts that Instagram has secondarily infringed her copyright in a photograph

17  she took and posted on her public Instagram account on May 29, 2020.  Compl. ¶ 11,

18  https://www.instagram.com/byalexishunley/ ("Hunley Instagram Account").  That post was embedded

19  into an article published on June 3, 2020 on the BuzzFeed News website.  *Id.*, Ex. A.  The article is titled

20  "17 Powerful Pictures of the Protests Through the Eyes of Black Photographers."  It features the

21  Instagram profiles of 17 Black photographers, including Hunley, and tells readers to "[f]ollow these

22  photographers on Instagram for their perspectives on the protests."  *Id* at 3.

23         Plaintiff Brauer asserts that Instagram has secondarily infringed a photograph he took and posted

24  on his public Instagram account on January 31, 2016.  *Id.* ¶ 12,

25  https://www.instagram.com/mscottbrauer/ ("Brauer Instagram Account").  That post was embedded into

26

27  _____
    [1] Instagram's Terms of Use are incorporated by reference and may be considered part of the Complaint.
    *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)) ("Even if a
28  document is not attached to a complaint, it may be incorporated by reference into a complaint if the
    plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

an online Time article published January 31, 2016, titled "These Photographers Are Covering the Presidential Campaign on Instagram." *Id.*, Ex. D.  The article states that it "selects the best photographers covering the campaign on Instagram" and features 17 photographers and their Instagram posts. *Id.* at 2.

### B.    How embedding works

Web pages are viewed using a browser, and the user's browser is responsible for loading and displaying the elements of a given web page.  "Embedding" is fundamentally a method of pointing a user's browser to an address where particular content may be found.  Because embedding is the technical feature at the heart of Plaintiffs' claims, how embedding works is discussed below.

### 1.    A user's browser retrieves HTML from a remote server and processes that HTML to generate the webpage on the user's screen

At its core, the web acts as a global file system where users can retrieve content stored on remote servers anywhere in the world.  A server is "essentially a computer connected to the Internet."  Compl. ¶ 34.  Upon request from a user to a specific server, the server transmits the requested information back to the user.  *See id.*  Specifically, when a web page is loaded, a file written in HyperText Markup Language (HTML) is transmitted to the user.  That HTML file contains (1) an identification of the content of the requested webpage (including instructions as to where necessary photos can be found) and (2) specifications for how the content should be laid out.  *Id.* ¶¶ 34–35.  Thus, when a user clicks a link for the Buzzfeed article accused by Plaintiff Hunley, the user's computer requests the webpage, and Buzzfeed's servers respond by transmitting an HTML file for that article.

The HTML file acts as a recipe for the webpage requested, describing what ingredients are needed, where they may be found, and how they should be combined in order to show the webpage on the user's screen.  *See id* ¶¶ 34–35.  When a user's computer retrieves an HTML file from a server, a browser, running on the user's computer, makes the recipe according to the instructions in the file and generates the webpage for the user to view.  *See id.*  For instance, when a user's browser receives the HTML file from Buzzfeed's server, the user's browser will process the HTML file, retrieve the identified ingredients, and display the article as instructed.

1

2

      **2.**     **When content is embedded (including content embedded from Instagram), the HTML causes the user's browser to retrieve files from third-party servers, not the website's own servers**

3          The HTML file may instruct the webpage to incorporate photos that must be fetched separately

4   from the text, whether from another server controlled by the same company, or from a different

5   company's server.  Thus, sometimes, the photos are retrieved from the web site's own servers.  But other

6   times, elements of a webpage are sourced from servers not owned by the website itself.  *See.* Compl.

7   ¶ 35.  The latter is what happens with embedding.  As the Complaint alleges:

8

9

10

11

12

13

14

15

              The HTML code allows for the arrangement of text and/or images and/or videos on a page and can also include photographs or videos to be available to be displayed.  When including a photograph or video on a webpage, the HTML code instructs the browser how and where to place the photograph(s) or video(s).  Put another way, "embedding" a photograph or video on a webpage is the act of a technical web coder adding a specific "embed" code to the HTML instructions that incorporates a photograph or video, *hosted in this case on Instagram's server*, to be displayed on a third-party webpage that the third-party controls with regard to the other text, photos or videos around the embedded work.  To embed a photo or video, the coder or web designer adds an "embed" code to the HTML instructions from a public Instagram account.  This code directs the browser to the Instagram server to retrieve the photo or video.  An embedded photo or video will then hyperlink to the third-party webpage for display.

16   Compl. ¶ 35 (emphasis added).

17          This allegation provides a complete factual basis to resolve this motion to dismiss:  Plaintiffs

18   affirmatively allege that the ***Instagram servers*** host and transmit the allegedly infringing content—not

19   servers owned or controlled by Buzzfeed or Time.  Plaintiffs allege that Instagram's embed tool provides

20   HTML code that causes the user's browser to retrieve the post ***from Instagram***, allowing the web

21   designer to copy and paste that snippet of code into the HTML file for the Buzzfeed or Time webpage.

22   *Id*. ¶ 2.  As a result, the Complaint alleges that when a user visits the Buzzfeed or Time webpage, the

23   HTML file transmitted to the user's browser contains the embed code copied from Instagram.  *Id.* ¶¶ 2,

24   34–35.[2]

25          That is, the embed code causes the user's browser to load ***a separate Instagram webpage*** in a box

26   located in a particular place on the Buzzfeed or Time webpage.  This functionality is referred to as an

27

28

---

[2] In the case of the Buzzfeed page in question, the reality is actually a bit more complicated than the Complaint alleges, but not in a way that matters to the dispute.

4

NOTICE OF AND MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 21-CV-03778-CRB

"Inline Frame" or "iframe."  The embed code for the Alexis Hunley image identified in the Complaint, for example, causes the user's browser to load an iframe of the web page https://www.instagram.com/p/CAx4LlugmsD/embed/ by giving the user's browser an instruction to load that web page as an inline frame within the Buzzfeed page.  The content of that web page is shown on Exhibit A of the complaint, at 10, within a particular place chosen by Buzzfeed on the Buzzfeed web page (under the words "Alexis Hunley in Los Angeles" and above the words "Instagram: @byalexishunley").



Compl., Ex. A at 10.  Nothing in that inline frame comes from Buzzfeed's servers; all of it comes from Instagram's servers.  Most saliently, the allegedly infringed image itself is loaded from Instagram's servers.  *See id.* ¶ 35.

Upon receiving a request from the user's computer for that image, Instagram's servers respond by

transmitting the image.  *Id.* ¶ 35.  The user's browser then displays the image from that file sent by Instagram's servers onto the user's screen.  *Id.* ¶¶ 2, 34–35.

Because the user's browser displays the image in the context of the Buzzfeed webpage, the image is said to be "embedded" in the layout of the webpage.  The embedded Instagram photograph is never hosted on or transmitted through Buzzfeed's servers; it is hosted only on Instagram's servers.  *Id.* ¶ 29 (alleging that the Instagram embed tool works "without those third-party embedders ever having actual possession of the copyrighted works"); ¶ 34 ("'[E]mbedding' is a technical process by which a copyrighted work can be made visible and displayed without the copyrighted work being saved on the server of the third-party website.").

## III.   ARGUMENT

To survive a motion to dismiss, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court must accept plaintiff's well-pleaded factual allegations as true, it need not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

Here, Plaintiffs bring three claims for secondary liability against Instagram, all of which are predicated on their allegation that third-party websites directly infringe their copyrights when they embed Plaintiffs' Instagram posts. *See, e.g.*, Compl. ¶ 69 ("Instagram's embed users have infringed and are infringing . . . by, *inter alia*, embedding infringing copies of Plaintiffs' and the Class members' copyrighted works onto and from Instagram's platform and publicly performing, displaying, distributing, and reproducing, or purporting to authorize the public performance, display, distribution or reproduction of such copyrighted works or infringing videos, all without authorization from Instagram or Plaintiffs and the members of the Class.").  Because embedding is not direct copyright infringement as a matter of law, Plaintiffs' secondary liability claims against Instagram must fail.

1
2

**A.   Because Plaintiffs have brought only secondary liability claims, Instagram can be liable only if Plaintiffs can plausibly allege that the third-party websites that embedded their copyrighted content directly infringed their copyrights**

3
4
5
6
7
8
9
10
11
12
13
14

There are two types of copyright liability, direct and secondary.  Direct copyright liability seeks to hold a company liable for its own infringement, while secondary liability seeks to hold a company liable for infringement by another.  *See Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666, 670 (9th Cir. 2017).  Put another way, "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement *by a third party*."  *Perfect 10, Inc v. Amazon.com, Inc.*, 508 F.3d at 1169 (citing *A & M Records, Inc. v. Napster*, *Inc.* 239 F.3d 1004, 1013 n.2 (9th Cir. 2001)) (emphasis added).  For that reason, it is essential in assessing a claim for copyright infringement to determine at the outset who committed the allegedly infringing act, and is therefore accused of direct infringement, and who is accused only under a theory of secondary liability.  *See Am. Broad. Cos. Inc. v. Aereo, Inc.*, 573 U.S. 431, 455 (2014) ("The distinction between direct and secondary liability would collapse if there were not a clear rule for determining whether *the defendant* committed the infringing act.") (Scalia, J., dissenting) (emphasis in original).

15
16
17
18

Here, Plaintiffs allege that the direct infringers are the third-party websites that embedded Plaintiffs' public Instagram posts—for example, Buzzfeed and Time.  Accordingly, if those websites cannot be held *directly* liable for copyright infringement (and, as discussed below, they cannot), then Instagram cannot be held *secondarily* liable.

19
20

**B.   Plaintiffs' allegations of embedding do not constitute direct infringement under the Ninth Circuit's "Server Test"**

21
22
23
24
25
26
27

Plaintiffs' Complaint recites the same threadbare allegations of direct liability by third-party publishers for all three counts of secondary liability it brings:  that "Instagram's embed users" violated plaintiffs' exclusive rights under Section 106 of the Copyright Act by "embedding infringing copies" of their photos posted on plaintiffs' Instagram accounts.  *See, e.g.*, Compl. ¶ 69.  But Plaintiffs' Complaint also alleges that those third-party publishers, like Buzzfeed and Time, embed Instagram posts by directing the user's browser to *Instagram's* servers, which the Ninth Circuit has held cannot constitute direct infringement as a matter of law.

28

7

1          1.      **The Server Test**

2          In *Perfect 10 v. Amazon*, the plaintiff alleged that Google infringed its display and distribution

3   rights by providing a link to full-sized copyrighted photos on the plaintiff's website via Google's image

4   search.  The district court denied the request for a preliminary injunction, holding that the plaintiff was

5   not likely to prevail because Google's servers did not store or communicate the copyrighted work.  The

6   Ninth Circuit affirmed, reiterating that Google did not directly infringe Perfect 10's Section 106(5)

7   display rights because the full-size photos viewed through Google's image search were actually hosted

8   on and transmitted to the user's browser by third-party servers, not Google's servers.  "Instead of

9   communicating a copy of the image," the court reasoned, Google merely "provide[d] HTML instructions

10  that direct[ed] a user's browser to a website publisher's computer that store[d] the full-size photographic

11  image."  *Perfect 10*, 508 F.3d at 1161.  Those HTML instructions "are lines of text, not a photographic

12  image[,]" and "do not themselves cause infringing images to appear on the user's computer screen."  *Id.*

13  They "merely give[] the address of the image to the user's browser[,]" which "then interacts with the

14  computer that stores the infringing image" to cause the image to appear.  *Id.*  Thus, "[p]roviding []

15  HTML instructions is not equivalent to showing a copy."  *Id.* at 1162.

16         The court applied the same reasoning to reject Perfect 10's assertion of its Section 106(3)

17  distribution rights[3]:

18             "Google's search engine communicates HTML instructions that tell a
               user's browser where to find full-size images on a website publisher's
19             computer, but ***Google does not itself distribute copies of the infringing
               photographs***.  It is the website publisher's computer that distributes copies
20             of the images by transmitting the photographic image electronically to the
               user's computer."
21

22

---

23  [3] Perfect 10 did not assert its Section 106(1) right to reproduce, but the Ninth Circuit explained that the
    server test would likewise apply to Section 106(1) because it also requires that the infringer have and
24  reproduce a "copy" of the work.  *Perfect 10*, 508 F.3d at 1160 ("Because Google's computers do not
    store the photographic images, Google does not have a copy of the images for purposes of the Copyright
25  Act.  In other words, Google does not have any 'material objects . . . in which a work is fixed . . . and
    from which the work can be perceived, ***reproduced***, or otherwise communicated' and thus cannot
26  communicate a copy.") (emphasis added) (citing 17 U.S.C. § 101 (defining "copies" as "material objects,
    other than phonorecords, in which a work is fixed by any method now known or later developed, and
27  from which the work can be perceived, reproduced, or otherwise communicated, either directly or with
    the aid of a machine or device.")).
28

8

*Id.* at 1162 (emphasis added).

The rule that a website must host the accused content on its own servers to be subject to ***direct liability*** for copyright infringement is now known as the "server test."  *See id.* at 1161 ("Google may facilitate the user's access to infringing images.  However, such assistance raises only contributory liability issues . . . and ***does not constitute direct infringement*** of the copyright owner's display rights.") (emphasis added) (citations omitted).  Since *Perfect 10*, courts in this Circuit have applied the server test to reject claims of copyright infringement.  *See Nakada + Assocs., Inc. v. City of El Monte*, No. EDCV161467GWSPX, 2017 WL 2469977, at \*4 (C.D. Cal. June 2, 2017) (applying *Perfect 10* and finding no copyright infringement where a website linked to allegedly infringing videos because "Plaintiffs cannot establish on the facts adduced here that, by merely linking to those videos, without anything more, Defendant displayed the videos publicly"); *Totally Her Media, LLC v. BWP Media USA, Inc.*, No. CV1308379ABPLAX, 2015 WL 12659912, at \*1, 11 (C.D. Cal. Mar. 24, 2015) (applying *Perfect 10* and finding no copyright infringement with respect to a website containing "user-generated links to outside content" where "the undisputed evidence shows all of the images at issue in this action were stored on third-party websites and linked exclusively by third-parties").

## 2.    The "Server Test" Bars Plaintiffs' Claims

Instagram's embed code links a user's browser to content on Instagram's servers the same way Google's image search linked a user's browser to content on third-party servers.  As described above, third-party websites like Buzzfeed and Time deliver HTML instructions from their servers to the user's browser, the user's browser fetches the Instagram post from Instagram's server, then the user's browser generates the webpage on the user's screen for viewing.  Under the Ninth Circuit's server test, a third party's act of delivering HTML instructions to the user's browser that merely links to copyrighted works on Instagram's servers is not direct infringement.[4]  *See, e.g.*, Compl., Ex. A at 10.

---

[4] Under the Server Test, the only possible direct infringer with respect to copyrighted content contained in an embedded post would be Instagram because its servers host and transmit the accused content.  Presumably because they have granted Instagram an express license to display their copyrighted photographs, however, Plaintiffs do not (and cannot) bring direct infringement claims against Instagram.

1
2
3
4
5
6
7
8
9
10
11



12    The fundamental flaw with the Complaint is that Plaintiffs' own allegations admit that when third

13  parties like Buzzfeed and Time embed an Instagram post, the post is transmitted from Instagram's

14  servers.  Compl. at ¶ 34 ("'embedding' is a technical process by which a copyrighted work can be made

15  visible and displayed *without the copyrighted work being saved on the server of the third-party*

16  *website.*") (emphasis added).  *See also id.* at ¶ 35 ("Put another way, 'embedding' a photograph or video

17  on a webpage is the act of a technical web coder adding a specific 'embed' code to the HTML

18  instructions that incorporates a photograph or video, *hosted in this case on Instagram's server*, to be

19  displayed on a third-party webpage that the third-party controls with regard to the other text, photos or

20  videos around the embedded work.  To embed a photo or video, the coder or web designer adds an

21  'embed' code to the HTML instructions from a public Instagram account.  *This code directs the browser*

22  *to the Instagram server to retrieve the photo or video*. . . .") (emphasis added).  Thus, taking Plaintiffs'

23  factual allegations as true, as the Court must in assessing a motion to dismiss, there is no direct

24  infringement upon which Plaintiffs' claims of secondary liability can be based.

25        **C.    Leave to amend would be futile**

26        Although Federal Rule of Civil Procedure 15(a)(2) is "very liberal . . . a district court need not

27  grant leave to amend where the amendment:  (1) prejudices the opposing party; (2) is sought in bad faith;

28  (3) produces an undue delay in litigation; or (4) is futile."  *AmerisourceBergen Corp. v. Dialysist West,*

*Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  Leave to amend here would be futile because the identity of the server that transmits the copyrighted works to the user is undisputed.  Both parties agree that the accused embedded content is transmitted from Instagram's servers, not the third-party publisher's servers, to the user's browser.  *See* Compl. at ¶ 35 ("Put another way, 'embedding' a photograph or video on a webpage is the act of a technical web coder adding a specific 'embed' code to the HTML instructions that incorporates a photograph or video, ***hosted in this case on Instagram's server***, to be displayed on a third-party webpage that the third-party controls with regard to the other text, photos or videos around the embedded work.").  Thus, there is no set of facts Plaintiffs could allege—without contradicting themselves—that would change the applicability of the Ninth Circuit's server test.  *See Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997) (amendment is futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense"); *see also Bauer v. Tacey Goss, P.S.,* No. C 12-00876 JSW, 2012 WL 2838834, at *3 (N.D. Cal. July 10, 2012) ("Because Plaintiffs have not offered a credible explanation for their contradiction, the Court need not accept their amended allegations as true."); *Azadpour v. Sun Microsys., Inc.,* No. c06-03272, 2007 WL 2141079, at *2 n. 2 (N.D. Cal. July 23, 2007) ("Where allegations in an amended complaint contradict those in a prior complaint, a district court need not accept the new alleged facts as true, and may, in fact, strike the changed allegations as 'false and sham.'").

## IV.    CONCLUSION

Plaintiffs granted Instagram a license to their works when they signed up and posted their photographs on their public Instagram accounts.  Accordingly, they gave up their ability to sue Instagram for direct infringement.  Under the Copyright Act and the Ninth's Circuit's decision in *Perfect 10*, they cannot now get around that license by suing Instagram under a theory of secondary liability.  Instagram respectfully requests that the Court dismiss Plaintiffs' copyright claims, without leave to amend.

Dated:  July 16, 2021                                     DURIE TANGRI LLP

                                                    By:_____/s/ Joseph C. Gratz_____
                                                            RAGESH K. TANGRI
                                                            JOSEPH C. GRATZ
                                                            ALLYSON R. BENNETT
                                                            ANNIE A. LEE

                                                    Attorneys for Defendant
                                                    INSTAGRAM, LLC

NOTICE OF AND MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 21-CV-03778-CRB

1

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Joseph C. Gratz*
RAGESH K. TANGRI
JOSEPH C. GRATZ
ALLYSON R. BENNETT
ANNIE A. LEE

NOTICE OF AND MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF / CASE NO. 21-CV-03778-CRB