| | |
|---|---|
| **CERA LLP**<br>Solomon B. Cera (SBN 099467)<br>Pamela A. Markert (SBN 203780)<br>595 Market Street, Suite 1350<br>San Francisco, CA 94105<br>Telephone: (415) 777-2230<br>Email: scera@cerallp.com<br>Email: pmarkert@cerallp.com | **DUNCAN FIRM, P.A.**<br>James H. Bartolomei III (SBN 301678)<br>809 W. 3rd Street<br>Little Rock, AR 72201<br>Telephone: (501) 228-7600<br>Email: james@duncanfirm.com |
| **LAW OFFICES OF TODD M. FRIEDMAN, P.C.**<br>Todd Friedman (SBN 216752)<br>Adrian R. Bacon (SBN 280332)<br>21550 Oxnard Street, Suite 780<br>Woodland Hills, CA 91367<br>Telephone: (877) 206-4741<br>Email: tfriedman@toddflaw.com<br>Email: abacon@toddflaw.com | **HOBEN LAW**<br>Bryan D. Hoben (Admitted *pro hac vice*)<br>1112 Main Street<br>Peekskill, NY 10566<br>Telephone: (347) 855-4008<br>Email: bryan@hobenlaw.com |

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS HUNLEY and MATTHEW SCOTT BRAUER, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>INSTAGRAM, LLC,<br><br>    Defendant. | Case No. 3:21-cv-03778-CRB<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>DATE:   OCTOBER 14, 2021<br>TIME:   10:00 A.M.<br>CTRM:   6, 17TH FLOOR<br>JUDGE:  HONORABLE CHARLES R. BREYER |

# **TABLE OF CONTENTS**

**Page(s)**

SUMMARY OF ARGUMENT ................................................................................................... iv

I.    INTRODUCTION ............................................................................................................. 1

II.    STATEMENT OF FACTS ................................................................................................ 3

III.    STANDARD OF REVIEW .............................................................................................. 5

IV.    ARGUMENT ..................................................................................................................... 6

    A.    The Server Test Does Not Apply To The Facts Of This Case ................................ 7

    B.    Courts Have Declined To Apply The Server Test To Substantially Similar Facts ......................................................................................................................... 10

    C.    The Server Test is Also Inconsistent with the US Supreme Court's Intervening Decision in *Aereo* ................................................................................................. 13

V.    CONCLUSION ............................................................................................................... 14

# TABLE OF AUTHORITIES

**CASES**

*American Broadcasting Companies, Inc. v. Aereo, Inc.*,
   573 U.S. 431 (2014) .................................................................................................. iv, 6, 13, 14

*Arista Records, LLC v. Doe 3*,
   604 F.3d 110 (2d Cir.2010) ........................................................................................................ 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 570 (2007) ........................................................................................................... 5

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
   637 F.3d 1047 (9th Cir. 2011) .................................................................................................... 5

*Cahill v. Liberty Mutual Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ........................................................................................................ 5

*Capitol Records, LLC v. ReDigi Inc.*,
   934 F. Supp. 2d 640 (S.D.N.Y. 2013), aff'd, 910 F.3d 649 (2d Cir. 2018) ............................... 6

*Carell v. Case Shubert*,
   104 F. Supp. 2d 236 (S.D.N.Y. 2000) ........................................................................................ 6

*Free Speech Sys., LLC v. Menzel*,
   390 F. Supp. 3d 1162 (N.D. Cal. 2019) .............................................................................. iv, 12

*Goldman v. Breitbart News Network, LLC*,
   302 F. Supp. 3d 585 (S.D.N.Y. 2018) ........................................................................ iv, 11, 12, 13

*Kelly v. L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994) ........................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...................................................................................................... 3

*Leader's Institute, LLC v. Jackson*,
   2017 WL 5629514 (N.D. TX. Nov. 22, 2017) ........................................................................ 12

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   591 F.Supp.2d 1098 (N.D. Cal. 2008) ....................................................................................... 7

*N.Y. Times Co. v. Tasini*,
   533 U.S. 483 (2001) ................................................................................................................. 13

*Nakada + Assocs., Inc. v. City of El Monte*,
   2017 WL 2469977 (C.D. Cal. June 2, 2017) ........................................................................... 10

*Nicklen v. Sinclair Broadcast Group, Inc., et al.*,
   2021 WL 3239510 (S.D. N.Y. July 30, 2021) .................................................................. iv, 2, 10

*Perfect 10 v. Google, Inc.*,
   416 F. Supp. 2d 828 (C.D. Cal. 2006) ....................................................................................... 9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ........................................................................................... *passim*

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
   668 F.3d 1148 (9th Cir. 2012) ............................................................................................ 5

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .................................................................................. 5

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ............................................................................................ 6

*Texaco, Inc. v. Ponsoldt*,
   939 F.2d 794 (9th Cir. 1991) .............................................................................................. 5

*Totally Her Media, LLC v. BWP Media USA, Inc.*,
   2015 WL 12659912 (C.D. Cal. Mar. 24, 2015) ................................................................ 10

**STATUTES**

17 U.S.C. § 101 ........................................................................................................................ 6, 11

17 U.S.C. § 106 ......................................................................................................................... 1, 6

**OTHER AUTHORITIES**

Timothy B. Lee, *Instagram just threw users of its embedding service under the bus,* Ars Technica,
   June 4, 2020 ........................................................................................................................ 3

**RULES**

Federal Rule of Civil Procedure
   Rule 12(b)(6) ....................................................................................................................... 5

## SUMMARY OF ARGUMENT

Defendant Instagram, LLC's motion to dismiss (the "Motion") does not challenge the sufficiency of Plaintiffs' claims, but instead misapplies and attempts to improperly expand the so-called "Server Test" set forth in *Perfect 10, Inc. v. Amazon.Com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10*"), in an effort to shield itself from liability for aiding rampant copyright infringement. But, the Server Test is not found in the plain statutory text of the Copyright Act as it relates to the display right. Moreover, the Server Test has not been applied in cases, as here, involving online media organizations. *See, e.g., Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162 (N.D. Cal. 2019); *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585 (S.D.N.Y. 2018); *Nicklen v. Sinclair Broadcast Group, Inc., et al.*, 2021 WL 3239510 (S.D.N.Y. July 30, 2021). Further, a Supreme Court decision supercedes *Perfect 10* by finding that a practical, functional perspective -- and not hyper technicalities -- determine whether a particular mode of content delivery is infringing a copyrighted work. *See American Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014).

## I. INTRODUCTION

This case poses a simple question: should one of the world's largest online tech companies profit from its own knowing assistance in the infringements of copyrighted works by third party online media companies?  The answer must be a resounding "no" because embedding, in the context of this case, creates a display right violation under the Copyright Act.  Simply put, Defendant Instagram, LLC ("Defendant" or "Instagram") should not be permitted to avoid liability for its alleged policy and practice of encouraging, assisting, and facilitating third parties' use of Instagram's "embedding" tool to cause the unauthorized display of Instagram users' copyrighted works onto third-party publishers' websites.

Plaintiffs have plausibly alleged that when a third party embeds copyrighted works from Instagram without authorization, Instagram thereby participates in the violation of their display right.  Instagram does not challenge the sufficiency of the allegations underlying Plaintiffs' claims, nor does it suggest that secondary liability does not exist for those who, like Instagram, facilitate the misappropriation of intellectual property rights.  Rather, the sole basis for its Motion lies in its misguided reliance on, and misapplication of, the so-called "Server Test" set forth in *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10*"), a case that was decided three years before Instagram launched in October 2010.

The Server Test excuses illicit uses of copyrighted work where the alleged infringer does not physically possess the work, *i.e.*, a JPEG file.  But the Server Test fails to address a copyright holder's "display right," a co-equal right in the copyright holder's exclusive "bundle of rights," alongside the rights of "reproduction," "distribution" and others.[1]  Critically, nowhere does the Copyright Act predicate the ability to "display" a copyrighted work on requiring a party's physical possession of the work.  Thus, application of the Server Test here would ignore the fact that, in our current digital age, it is quite possible for one to cause the display of a copyrighted photograph without ever having possession of it.  Not surprisingly, the gross inequities created by subordinating one of a copyright holders' rights to another has resulted in the Server Test being

---

[1] *See* 17 U.S.C. § 106.

heavily criticized and increasingly abandoned by courts throughout the nation.[2]

By invoking the Server Test to negate the primary infringements of Plaintiffs' copyrighted photos, Instagram essentially asks this Court to establish a categorical, *per se* rule that divests all copyright holders of their exclusive display right each time a third-party website publisher embeds a copyrighted work from Instagram into its website without authorization. In other words, "embedding" copyrighted content from Instagram would never result in an infringement of the display right. If adopted by this Court, such an application of the Server Test would eviscerate exclusive intellectual property rights for copyright holders in the modern internet age.

Its inherent flaws aside, the Server Test as established in *Perfect 10* and its progeny is not applicable to the facts of this case. *Perfect 10* specifically concerns internet search engine (*e.g.*, Google) queries and viewing copyrighted images if a user clicks on a link. Instagram is not a search engine. The primary infringements alleged here were acts undertaken by online media companies which actively decided to embed Plaintiffs' copyrighted content into posts or articles on their commercial websites. *See* Complaint for Damages Based on Copyright Infringement. ¶¶33-44.[3] ECF No. 1. This is far afield from application of the Server Test in *Perfect 10* only in the search engine context. Instagram's reframing and contorting the facts of this case to fit the Server Test should be rejected.

Ironically, but most strikingly, in attempting to use the Server Test as a liability shield, Instagram claims the Primary Infringers have not themselves infringed by embedding plaintiffs' photos without permission. However, Instagram's own public admissions warn embed users such as the Primary Infringers that they should not embed the work of Instagram users without necessary permissions from the copyright holder. Moreover, Instagram acknowledges publicly

---

[2] For example, very recently, the Honorable Jed S. Rakoff of the Southern District of New York denied a motion to dismiss a case analogous to the one at bar, ruling that Plaintiff, a well-known wildlife photographer, had plausibly alleged viable copyright infringement claims when third party media companies (Sinclair Broadcast Group Inc. *et. al.*) embedded a copyrighted video from Facebook, Instagram's corporate parent, thereby violating the display right of the Copyright Act. *Nicklen v. Sinclair Broadcast Group, Inc.*, *et al.*, 2021 WL 3239510 (S.D.N.Y. July 30, 2021).

[3] All references hereafter to "¶ __" are to paragraphs of the Complaint.

that, while it retains the right or option to grant a sublicense when a user signs up for Instagram,[4] Instagram <u>has never granted a third party a sublicense to embed a user's work</u>. ¶42. *See also* Timothy B. Lee, *Instagram just threw users of its embedding service under the bus*, Ars Technica (June 4, 2020, 2:32 PM), https://arstechnica.com/tech-policy/2020/06/instagram-just-threw-users-of-its-embedding-api-under-the-bus/.

Dismissal here would sanction a broad expansion of the Server Test, ushering in an inequitable "rights grab" for social media tech companies and allowing both primary and secondary infringers to profit from the unauthorized display of copyrighted works, while robbing copyright holders of potential licensing opportunities for those works. Instagram invites this Court to conflate copyright owners' exclusive rights in ways that were never intended under the plain language of the Copyright Act (or *Perfect 10*) as a means of avoiding accountability for the role Instagram plays in causing copyright infringements on a mass scale. Accordingly, the Motion should be denied.

**II.     STATEMENT OF FACTS**

Plaintiffs filed this class action on behalf of themselves and other similarly situated persons and entities whose registered copyright works were uploaded to Instagram, and subsequently were caused to be displayed on third-party websites without their consent, via Instagram's embedding tool. ¶62. Causes of action are alleged for Inducement of Copyright Infringement, Contributory Copyright Infringement, and Vicarious Copyright Infringement. ¶¶68-95.

Plaintiffs' well pled complaint alleges that each Plaintiff owns validly registered photos that were posted to their respective Instagram accounts and at some point, those photos were separately embedded by Time.com and Buzzfeed.com from Instagram (each alleged to be a

---

[4] Plaintiff objects to Instagram's attempt to introduce a current version of its Terms of Use attached at Exhibit 1 on the Declaration of Allyson R. Bennett in Support of Defendant's Motion to Dismiss Complaint dated July 16, 2021 beyond its mere existence. ECF No. 16-1. The Class Period is July 1, 2013 to the present (¶62) and Defendant provides no foundation to establish that the Terms of Use cited in its brief existed during the entire Class Period or what facts it intends to assert from the document. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (It "is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

1  "Primary Infringer" with respect to Instagram's alleged secondary infringement) without
2  authorization from Plaintiffs, thereby violating the display right.  ¶¶11-12.  While the Primary
3  Infringers' acts are wrongful as alleged, this case seeks to expose the core root of the problem:
4  Instagram itself.  Plaintiffs allege that Instagram's embedding tool caused infringements of
5  Plaintiffs' respective display rights as part of a widespread, for-profit practice facilitated by
6  Instagram (and its parent company Facebook, Inc.), and for which Instagram is culpable.
7  Plaintiffs further allege that Instagram created and encouraged the use of its embedding tool to
8  generate significant revenue.  ¶48.  It did so knowing that copyright holders would publish their
9  valuable copyrighted works on Instagram and that third party publishers would use its embedding
10 tool to display copyrighted works without permission from their holders, or from Instagram itself.
11 ¶¶37, 41-42.  In other words, Instagram encouraged its users to upload their images to
12 Instagram's servers and at the same time Instagram regularly and systematically solicited third
13 party media companies to embed those images, thereby infringing each copyright holder's
14 exclusive display right.  ¶38.

15 　　　Only in June 2020, after a seven-year period of reckless disregard for copyright owners,
16 did Instagram publicly admit that third parties required a license or permission from copyright
17 holders to embed copyrighted works.  ¶6.  Nonetheless, at all relevant times, Instagram also failed
18 to provide copyright holders any means or tools to track or search for potential infringements of
19 their works facilitated by the embedding tool.  ¶39.  Instagram's actions secondarily violated
20 Plaintiffs' exclusive display rights, for Instagram's financial benefit, and allowed third party
21 publishers to freely embed copyrighted works onto their websites without paying licensing fees or
22 obtaining the requisite permission from the holder or Instagram.  ¶¶7, 10, 46-48.

23 　　　Instagram's efforts have diluted the value of copyrighted works by usurping licensing
24 opportunities and the market for copyright holders by violating their display right.  Instagram was
25 aware of and recklessly disregarded the fact that third-party website publishers never obtained
26 permission from Instagram or from the copyright holders to display copyrighted works via the
27 embedding tool.  ¶¶4, 48, 53.  In fact, Instagram intentionally and systematically handled,
28 controlled, made reference to, and used valuable copyrighted works with the intent and

- 4 -

knowledge that third party online publishers were embedding those works without ever obtaining a license from the copyright owners, which in turn created significant revenue-generating events for Instagram arising from the known infringing activity of third parties. *Id*. The causes of action for secondarily liability are properly alleged and the Motion should accordingly be denied.

### III.   STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is properly granted only where the complaint fails to assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (plausibility standard does not require "the who, what, when, where and how of the misconduct alleged."). Nor is "[t]he standard at this stage...that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

On a Rule 12(b)(6) motion, courts are to accept well pled factual allegations as true, drawing all reasonable inferences in the favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). If the Court grants a motion to dismiss, but the complaint can be amended, the Court should grant leave to amend. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).

There can be no reasonable dispute here that Plaintiffs have properly alleged the requisite primary copyright infringements. "To establish a prima facie case of copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012). Allegations must include "(1) which original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) 'by what acts during what time' the defendant infringed the copyright." *Carell v. Case Shubert*, 104 F. Supp. 2d 236, 250 (S.D.N.Y.

2000) (quoting *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994)).  Plaintiffs have pled all necessary elements to establish an underlying copyright infringement claim.  ¶¶11, 12, 69-70.  As explained below, the secondary liability allegations are sufficient as well.

## IV.    ARGUMENT

Plaintiffs plausibly plead that each of the Primary Infringers displayed Plaintiffs' copyrighted photographs in violation of the Copyright Act.  Section 106 of the Copyright Act (the "Act") grants copyright owners the exclusive public display right and control of the economic value of their work.  *Id.*  "Public display includes 'show[ing] a copy of [a work], either directly or by means of a film, slide, television image, or any other device or process.' *Id*. § 101." *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 652 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018). Plaintiffs establish *prima facie* copyright infringement based on ownership of valid, registered copyrighted photographs, and Primary Infringers' unauthorized displays of these copyrighted works.  ¶¶68-95.  "The owner of a copyright has the exclusive right to -- or to license others to -- reproduce, perform publicly, *display* publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir.2010) (citing 17 U.S.C. § 106); *see also American Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014);[5] *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1145 fn. 3 (9th Cir. 2008).  Plaintiffs thus satisfy all requirements for establishing primary copyright violations of Primary Infringers.

Not surprisingly, Instagram does not challenge the sufficiency of the Complaint's allegations in this regard. Rather, its entire argument is an attempt to nullify the predicate infringements by claiming that, because the Primary Infringers used Instagram's embedding tool to display Plaintiffs' copyrighted photos and the actual digital file of the copyrighted work was stored on Instagram's servers, not the computer servers of the Primary Infringers, there can be no

---

[5] Despite technological complexity concerning the "behind-the-scenes" delivery of images, a defendant violates the exclusive right to "show [an audiovisual work's] images in any sequence," because "whether Aereo transmits from the same or separate copies, it ... shows the same images and makes audible the same sound."  Simply put, to "show a copy" is to display it. *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431, 441-48 (2014), citing 17 U.S.C. § 101.

- 6 -

1   violation of the display right.  Instagram offers no further basis for dismissal other than its gross
2   misapplication and expansion of the Server Test to facts that do not apply.  Simply put,
3   embedding technology was not at issue in *Perfect 10.*  Instead, the Court there sought to balance
4   the utilitarian value of a search engine such as Google to society at large as a policy
5   consideration.  Instagram has misapplied the Server Test because Instagram is not a search engine
6   and the policy considerations animating the *Perfect 10* decision do not apply here.  Expanding the
7   Server Test in such a manner would eviscerate and undermine several critical rights under the
8   Copyright Act, most notably the exclusive display right.
9          Courts in the Ninth Circuit and others have rightfully either been skeptical of endorsing an
10  expansion of the Server Test beyond search engines or outright rejected its application for
11  embedded copyrighted works.  This is because creating an expansion of rights that conflict with
12  the plain language and objective intent of the Copyright Act would lead to inequitable results, and
13  an erosion of both the letter and the spirit of the Act.  Here, Plaintiffs do not seek to completely
14  overrule the Server Test as it applies to the Googles of the world.  Instead, they seek a more
15  limited, narrower, and restricted -- but fairer -- application of the Server Test for a social media
16  photo company such as Instagram which is in the business and has been trusted with the privilege
17  of storing, handling and displaying other people's copyrighted works.
18        **A.     The Server Test Does Not Apply To The Facts Of This Case**
19         "All theories of secondary liability for copyright and trademark infringement require some
20  underlying direct infringement by a third party." *Louis Vuitton Malletier, S.A. v. Akanoc*
21  *Solutions, Inc.*, 591 F.Supp.2d 1098, 1104 (N.D. Cal. 2008).  Despite it being facially apparent
22  from the Complaint that Plaintiffs' copyrights were publicly displayed by third parties which
23  lacked authorization or a license, and that Instagram provided the means by which such
24  infringement could occur, Instagram asks this Court to dismiss this case through a gross
25  expansion of the Server Test.  Under the Server Test, a website publisher such as Google.com
26  displays an image by "using a computer to fill a computer screen with a copy of the photographic
27  image fixed in the computer's memory." *Perfect 10*, 508 F.3d at 1160.
28         In contrast, when a website publisher embeds an image (such as with Instagram), HTML

code "gives the address of the image to the user's browser" and the browser "interacts with the [third-party] computer that stores the infringing image." *Id*. Instagram asks this Court to conclude that, because the Primary Infringers used Instagram's embedding tool to display Plaintiffs' copyrighted photographs on their websites without permission, instead of directly hosting the photos on the Primary Infringers' servers, that this is protected conduct. However, the Ninth Circuit has not drawn such a bright line, and a close reading of *Perfect 10* supports a narrower application, especially regarding the allegations made against Instagram here.

In *Perfect 10*, the Ninth Circuit considered a claim of direct infringement of the display right against Google based on the operation of Google Image Search, which is a search engine for photos. Google used "in-line linking" to display full-size, infringing copies of photos in its search results that were sourced from third-party websites where the photos were physically stored. *Perfect 10*, 508 F.3d at 1155-56. Although Google did not store the file of the photo itself, the HTML code on Google's webpage directed the user's web browser to retrieve the photo from the third-party sites and to display those photos in the user's browser window. *Id*. at 1156. From a user's perspective, the "window appear[ed] to be filled with a single integrated presentation." In actuality, however, the window displayed a photo that was hosted on a third-party website, framed by content from Google's own website. *Id*.

The Ninth Circuit concluded that Google did not display the images at issue because its computers "d[id] not store the photographic images" themselves. *Id*. at 1160. With little attempt to square its reasoning with the Copyright Act's plain language reflecting the original intent of Congress, the Ninth Circuit found that Google's use of HTML instructions to "direct a user's browser to a website publisher's computer that stores the full-size photographic image" was "not equivalent to showing a copy," even if the image appeared to the user as part of the Google website. *Id.* at 1161. Accordingly, whether a website publisher is directly liable for infringement of the display right appeared to turn on the technical distinction of whether an image is hosted on the publisher's own server, or is instead visible on the website's visual display from a third-party location.

*Perfect 10's* reasoning was highly fact-driven and is clearly not applicable here with

- 8 -

PLAINTIFFS' OPPOS. TO MOTION TO DISMISS   CASE NO. 3:21-CV-03778-CRB

regard to Instagram, a platform which did not exist in 2007.  In *Perfect 10*, the technology at issue was the operation of an Internet search engine (similar to an online library catalogue), the express purpose of which the Court described as facilitating access and directing users to other locations on the Internet.  According to the underlying district court opinion, because Google Image Search operated "[m]erely to index the web so that users can more readily find the information they seek," it "should not constitute direct infringement."  *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 844 (C.D. Cal. 2006), *aff'd in relevant part sub nom.*, *Perfect 10*, 508 F.3d 1146; *see also Perfect 10*, 508 F.3d at 1154 (describing the case as involving "efforts to stop an Internet search engine from facilitating access to infringing images").  As the Court viewed it, application of a "Server Test" in that context would "maintain[], however uneasily, the delicate balance for which copyright law strives -- i.e., between encouraging the creation of creative works and encouraging the dissemination of information."  *Perfect 10*, 416 F. Supp. 2d at 844.

The *Perfect 10* district court implied that its endorsement of the Server Test was a <u>policy judgment</u> and did not hold that the test was appropriate for every case.  In adopting the test, the Court expressly acknowledged that application of the test was "susceptible to extreme or dubious results."  *Perfect 10*, 415 F. Supp. 2d at 839.  Significantly, the Court acknowledged that Google and Amazon did not host the offending material, they merely operated search engines whereby Internet users could search for content and potentially access third party websites of entities which themselves were misappropriating the copyrighted material.  *Id.*

Importantly, the Server Test, as applied in *Perfect 10,* was not used as the means by which secondary liability (*i.e.* the liability sought to be imposed by Plaintiffs in the case at bar) could be avoided.  Rather, there, direct infringement was "undisputed."  *Perfect 10*, 508 F.3d at 1169-70.  Accordingly, the infringement question presented in *Perfect 10* concerned matters not raised in Instagram's Motion, namely whether there was contributory or vicarious infringement.  Instagram does not challenge these allegations because Plaintiffs have sufficiently pled secondary liability arising from Instagram's conduct.

Finally, Instagram's additional cited authority (Motion at 9) involves inapposite cases because those cases did not involve embedding, and thereby displaying, copyrighted photographs.

1   In *Nakada + Assocs., Inc. v. City of El Monte*, 2017 WL 2469977 (C.D. Cal. June 2, 2017), the
2   defendant displayed hyperlinks, not photos, to other websites that contained the plaintiff's
3   copyrighted material.  In *Totally Her Media, LLC v. BWP Media USA, Inc.*, 2015 WL 12659912
4   (C.D. Cal. Mar. 24, 2015), the plaintiff sought to divest the defendant of its DMCA Section 512
5   safe harbor immunity for service providers, which would have the effect of making the defendant
6   a primary infringer in the case. While both decisions do cite from cases in the *Perfect 10* progeny,
7   neither employs the Server Test.

8   In sum, *Perfect 10* is factually distinguishable from this case and the Server Test should
9   not be expanded beyond the facts of *Perfect 10*.

10   **B.    Courts Have Declined To Apply The Server Test To Substantially Similar Facts**
11

12   A number of courts have been presented with facts similar to this case and have
13   distinguished *Perfect 10* and limited its application to search engines.  This Court should do the
14   same.

15   Just two weeks after Instagram filed its Motion, Judge Rakoff of the Southern District of
16   New York issued an opinion and order denying defendants' motion to dismiss a case addressing a
17   substantially similar issue as to whether embedding a copyrighted video from Facebook violated
18   the display right under the Copyright Act. *See Nicklen v. Sinclair Broadcast Group, Inc., et al.*,
19   2021 WL 3239510 (S.D. N.Y. July 30, 2021).  The court found that the defendants were plausibly
20   in violation of Plaintiff Nicklen's display right as alleged in his complaint for their infringing acts
21   of using Facebook's embedding tool to publish a copyrighted video on numerous third party
22   websites without authorization from the copyright holder. *Id*. at *7.  Plaintiff captured footage of
23   a starving polar bear and posted his copyrighted video to Instagram and Facebook.  Thereafter,
24   the defendants used the Facebook embed tool to display Nicklen's copyrighted video on
25   numerous individual, unique websites of television stations without license or authorization from
26   Plaintiff.  The defendants argued, under the Server Test born in *Perfect 10*, that because each
27   website did not store or possess the video file on any of the Sinclair Defendants' servers, but
28   instead only used the Facebook embed tool, they did not "display" the video within the meaning

1    of the Copyright Act. *Id*. at *4. The court disagreed, in pointed fashion.

2          Judge Rakoff ruled that under the plain language of the Copyright Act, "[t]o 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process or, in the case of a motion picture or other audiovisual work, to show individual images nonsequentially." *Id*. at *3, citing 17 U.S.C. § 101. The *Nicklen* court concluded that under a plain, textual analysis, "a defendant violates an author's exclusive right to display an audiovisual work publicly when the defendant without authorization causes a copy of the work, or individual images of the work, to be seen -- whether directly or by means of any device or process known in 1976 or developed thereafter" and held that the statute was and should be technologically neutral. Under this reasoning, "[t]he Copyright Act's text and history establish that embedding a video on a website 'displays' that video, because to embed a video is to show the video or individual images of the video nonsequentially by means of a device or process." *Id*.

14         The defendants in *Nicklen* argued that the Server Test does not distinguish embedding from displaying copyrighted material, and sought to expand *Perfect 10* to their direct infringements. *Id*. at *4. The court found the Server Test to be contrary to the text and legislative history of the Copyright Act for a number of powerfully persuasive reasons, including "Congress's endeavor to ensure that the full 'bundle' of exclusive rights will address evolving modes of exploitation of works." *Id.* (citation omitted). Notable, however, were the distinguishing facts that the court observed should limit the *Perfect 10* holding to search engines: "(1) the defendant operated a search engine and (2) the copyrighted images were displayed only if a user clicked on a link." *Id*. citing *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 595 (S.D.N.Y. 2018) (distinguishing *Perfect 10* on these grounds in which a photo of Tom Brady was embedded from Twitter onto numerous media websites and the Server Test was not applied to embedding). Given that neither Facebook, nor the third party primary infringer-equivalent defendants (the numerous website publishers) were acting as search engines or online libraries, and given that no viewer intervention was required to display the copyrighted work, the *Nicklen* court found that defendants' causing the display of the copyrighted work was identical to

how it would appear had the work been stored on its own servers and shown on its websites through nearly identical HTML code. *Id*. at 4. Judge Rakoff found the Server Test's distinction to be without application to a fact pattern such as Facebook embedding. "An individual still image from the Video awaits Sinclair readers whether they click the image to play the video or not. Thus, *Perfect 10*'s test is a poor fit for this case, and the Court declines to adopt it." *Id*. As such, application of the Server Test to absolve Instagram -- like its parent Facebook (which uses the same embed code technology), would entirely undermine the exclusive display right under the Copyright Act.

Judge Rakoff is not alone in applying a narrow application of the Server Test to copyright cases. Recently, a court in this district found defendant's reliance on *Perfect 10* problematic since they did not cite any "case applying the *Perfect 10* server test outside of the context of search engines" such as Google. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1172 (N.D. Cal. 2019) (Orrick, J.). In *Leader's Institute, LLC v. Jackson*, 2017 WL 5629514 (N.D. TX. Nov. 22, 2017), the court distinguished *Perfect 10* on nearly identical grounds. The court observed that displaying copyrighted works online through a method similar to embedding where users would visibly see copyrighted material on the infringers' web domain, was substantively different from a mere hyperlink that required additional user action to access and view the copyrighted work, and declined to expand the Server Test. *Leader's Institute* at *11.

In another similar recent case, *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d at 595, the court directly addressed the embed question in a copyright holder's favor by holding, "when defendants caused the embedded Tweets to appear on their websites, their actions violated plaintiff's exclusive [copyright] display right; the fact that the image was hosted on a server owned and operated by an unrelated third party (Twitter) does not shield them [the Primary Infringers] from this result." *Id.* at 586. "Most importantly, nowhere in the plain textual reading of the Copyright Act is "possession of work" mentioned – contrary to the "Server Test" – "as a prerequisite for infringement." *Id.* at 592. As *Goldman* held, neither "the text or purpose of the Copyright Act suggest[s] that physical possession of an image is a necessary element to its

display for purposes of the Act." *Id*. at 594.[6] Rather, what is important is whether the alleged infringer is itself presenting the copyrighted work to members of the public. The *Goldman* court granted partial summary judgment in favor of the copyright holder, rejecting application of the Server Test on similar grounds to the other decisions cited herein.

What is clear from these decisions is that the Ninth Circuit's 2007 Server Test was a policy-driven doctrine not found in the plain text of the Copyright Act and is one that ought to be narrowly limited to its facts. There is no sound legal or factual or policy justification for expanding the Server Test outside of search engines like Google where a user must click a hyperlink to display copyrighted material. Instagram's motion presents no authority or factual justification for such an expansion. Accordingly, the Motion should be denied.

**C.    The Server Test is Also Inconsistent with the US Supreme Court's Intervening Decision in *Aereo***

The Ninth Circuit's 2007 decision in *Perfect 10* is not only inconsistent with the plain language of the Copyright Act, and inapplicable to the facts of this case, but it also runs contrary to subsequent Supreme Court authority that rejected the very sort of technical distinctions that underpinned the Server Test in the first instance. For this reason as well, the *Perfect 10* decision should be limited in its application to search engines only.

In *American Broadcasting Cos. v. Aereo, Inc*., 573 U.S. 431 (2014), the Court considered claims under the Copyright Act's public performance right, which is closely related to the display right. In *Aereo*, an Internet-based re-transmitter of over-the-air television signals argued that it did not "perform the copyrighted work publicly" because each transmission technically came from a miniature antenna assigned to each user and, therefore, was a "private" rather than "public" performance. *Id*. at 443-46. The Court rejected that argument, noting that the technical difference "means nothing to the subscriber. It means nothing to the broadcaster. We do not see how this single difference, invisible to subscriber and broadcaster alike, could transform a

---

[6] The *Goldman* reading is consistent with the Supreme Court's admonition that, to determine whether a work is infringed under the Copyright Act, a court must "focus on the [work] as presented to, and perceptible by" the public. *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 499 (2001). For purposes of the display right, then, it is the viewer's experience that matters, <u>not</u> the internal mechanics of how the content is stored or retrieved.

- 13 -

system" from infringing to non-infringing. *Id*. at 444. "Viewed in terms of Congress' regulatory objectives," the Court asked rhetorically, "why should any of these technological differences matter?" *Id*. at 446. *Aereo* therefore provides that it is a practical, functional perspective, and not hyper technicalities, that determine whether a particular mode of content delivery is infringing or not.

The Server Test that Instagram champions is wholly inconsistent with *Aereo*. Where a website publisher purposely constructs its website to show a copyrighted video as part of that website -- whether through HTML instructions, embed code, or "any other device or process" that has not yet been invented by tech companies like Facebook or Instagram -- it is not only the website publisher's action but ultimately the reasonable viewer's perception that matters, regardless of the physical location of the image being displayed. The Instagram embed represents a "rights grab" that should be thwarted and outweighed by the Copyright Act's exclusive bundle of rights.

## V.   CONCLUSION

Instagram's Motion fails to provide any credible support in fact, law or policy argument to maintain that the Server Test applies to embedding a copyright holder's copyrighted work from Instagram onto a third party website. Technologically, the Copyright Act's text does not take into account nor is it relevant where the copyrighted work is stored to trigger a violation of the display right in the context of a tech company like Instagram. Instagram's expansion of the Server Test to all internet companies would lead to absurd, dubious and inequitable results, where the display right would become extinguished. Enablers of infringements, such as Instagram and third party online media publishers, would continue to profit from the value of copyrighted photos by merely providing a hyper-technical liability shelter of judicial creation that should only be limited to search engines such as Google. Visually, functionally, and practically, there is no difference whatsoever between the embedded photographs on Primary Infringers' websites and a scenario where the same website uploads the file for display of the same photograph, but stores it on the server of that online publisher. An ordinary Internet user does not know or care about the difference and this fact should not be determinative of the outcome here for protecting the display

of copyright holders.

Plaintiffs respectfully submit that the Court should deny the Motion. Alternatively, should the Court grant some or all of the Motion, Plaintiffs request leave to amend.

Dated: August 23, 2021

Respectfully submitted,

**CERA LLP**

By: /s/ *Solomon B. Cera*
Solomon B. Cera
Pamela A. Markert
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 977-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

**DUNCAN FIRM, P.A.**
James H. Bartolomei III
809 W. 3rd Street
Little Rock, AR 72201
Telephone: (501) 228-7600
Email: james@duncanfirm.com

**HOBEN LAW**
Bryan D. Hoben (admitted *pro hac vice*)
1112 Main Street
Peekskill, NY 10566
Telephone: (347) 855-4008
Email: bryan@hobenlaw.com

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd Friedman
Adrian R. Bacon
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
Email: tfriedman@toddflaw.com
Email: abacon@toddflaw.com

*Attorneys for Plaintiffs and the Proposed Class*