IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS HUNLEY, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>INSTAGRAM, LLC,<br><br>　　　　Defendant. | Case No. 21-cv-03778-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

A copyright owner "has the exclusive right" to "display" a copyrighted image or video "publicly." 17 U.S.C. § 106(5). To "display" a copyrighted image or video means "to show a copy of it, either directly or by means of . . . any other device or process." Id. § 101. "Copies" are "material objects . . . in which a work is fixed by any method . . . and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." Id. And a work is "fixed in a tangible medium of expression when its embodiment in a copy . . . , by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." Id.

The Ninth Circuit has applied these statutory definitions of the terms "display," "copy," and "fixed" to determine when a website that shows a copyrighted image has violated a copyright owner's exclusive display right. See Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1160 (9th Cir. 2007). Under Perfect 10, an "image is a work that is 'fixed' in a tangible medium of expression, for purposes of the Copyright Act, when embodied (i.e., stored) in a computer's server (or hard disk, or other storage device)." Id. (internal quotation marks omitted). If a website publisher does not "store" an image or

video in the relevant sense, the website publisher does not "communicate a copy" of the image or video and thus does not violate the copyright owner's exclusive display right. Id. at 1160–61. This rule is known as the "server test." See Mot. to Dismiss (dkt. 16) at 1; Opp. (dkt. 25) at 7.

 Here, Plaintiffs Alexis Hunley and Matthew Brauer (collectively, Hunley) are suing Defendant Instagram, LLC for copyright infringement. See Compl. (dkt. 1) at 19–22. Instagram is a social media platform that enables users like Hunley to share photographs and videos. Id. ¶ 1. Hunley does not assert that Instagram violates Hunley's exclusive display right by showing photographs that Hunley shares. Id. ¶ 2–3. Instead, Hunley asserts that an Instagram feature (an "embedding tool") enables third-party websites to display copyrighted photos or videos posted to an Instagram account. Id. And according to Hunley, offering this tool makes Instagram secondarily liable for those third parties' copyright infringement. Id. 19–22. Instagram has moved to dismiss Hunley's complaint. See Mot. to Dismiss.

 The parties' dispute hinges on a single legal question. The parties agree that Instagram is not a direct copyright infringer. See Mot. to Dismiss at 1; Opp. at 1. They also agree that to assert secondary liability claims against Instagram, Hunley must show "some underlying direct infringement by a third party." See Opp. at 7 (quoting Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc., 591 F.Supp.2d 1098, 1104 (N.D. Cal. 2008)). And the parties agree that third parties using Instagram's embedding tool do not store the images and videos embedded on their websites on their own servers or other storage devices, because Instagram stores those images and videos. See id. at 8; Mot. to Dismiss at 1; Compl. ¶¶ 34–35. The parties disagree about whether those third parties have nonetheless violated Instagram users' exclusive display rights, such that Instagram could be secondarily liable for copyright infringement. See Mot. to Dismiss at 1; Opp. at 6.

 Under Perfect 10, the third parties do not violate Instagram users' exclusive display rights. See 508 F.3d at 1160–61. Because they do not store the images and videos, they

1   do not "fix" the copyrighted work in any "tangible medium of expression." See 17 U.S.C.
2   § 101. Therefore, when they embed the images and videos, they do not display "copies" of
3   the copyrighted work. Id.; see Perfect 10, 508 F.3d at 1160.
4       Hunley argues that Perfect 10's server test does not apply here. The Court
5   disagrees.
6       First, Hunley argues that the server test should not apply to third-party websites that
7   embed images and videos shared on social media because Perfect 10 addressed a "search
8   engine" and reflected a "highly fact-driven . . . policy judgment." Opp. at 8–9 (emphasis
9   omitted). That is wrong. Perfect 10 relied on the "plain language of the statute," not
10  policy considerations, to craft a test for "when a computer displays a copyrighted work"
11  under 17 U.S.C. § 106(5). See 508 F.3d at 1160. Hunley relies on an out-of-circuit district
12  court decision rejecting the server test and suggesting that Perfect 10 should be "cabined"
13  to the search engine context, or contexts in which an Internet user must click a hyperlink to
14  view an image. See Nicklen v. Sinclair Broadcasting Group, Inc., et al, 2021 WL 3239510
15  (S.D.N.Y. July 30, 2021). But unlike the U.S. District Court for the Southern District of
16  New York, this Court is not free to ignore Ninth Circuit precedent. And in purporting to
17  establish a test for when a computer displays a copyrighted image, Perfect 10 did not state
18  or indicate that its holding was limited to the unique facts presented there.[1] Thus, this
19  Court must faithfully apply Perfect 10 absent a contrary Ninth Circuit or Supreme Court
20  ruling.
21      Second, Hunley argues that American Broadcasting Cos. v. Aereo, Inc. is such a
22  ruling. See Opp. at 13 (citing 573 U.S. 431 (2014)). But Aereo is not "clearly

---

[1] The same goes for Leader's Institute, LLC v. Jackson, another out-of-circuit district court decision that both rejected Perfect 10 and attempted to artificially confine Perfect 10 to its facts. See 2017 WL 5629514, at *11 (N.D. TX. Nov. 22, 2017). And to the extent that another court in this district has suggested (in dicta) that Perfect 10 applies only in "the context of search engines," Free Speech Systems, LLC v. Menzel, 390 F. Supp. 3d 1162, 1172 (N.D. Cal. 2019), this Court disagrees. Furthermore, Perfect 10 addressed technology remarkably similar to the technology at issue here. In Perfect 10, Google used HyperText Markup Language (HTML) code to show Internet users images stored by other websites. See 508 F.3d at 1159–60. Here, third parties use HTML code to show Internet users images stored by Instagram. See Compl. ¶ 2.

irreconcilable" with Perfect 10's "reasoning or theory." See Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003). In Aereo, the Supreme Court addressed another exclusive right: a copyright owner's "exclusive right to perform the copyrighted work publicly." 573 U.S. at 435 (quoting 17 U.S.C. § 106(4)) (internal quotation marks and alterations omitted). That exclusive performance right includes the right to "transmit or otherwise communicate a performance . . . of the [copyrighted] work . . . to the public, by means of any device or process, whether the members of the public capable of receiving the performance . . . receive it in the same place or in separate places and at the same time or at different times." Id. at 436 (quoting 17 U.S.C. § 101) (alterations in original). Aereo offered subscribers broadcast television programming over the Internet. See id. The data that Aereo streamed "to each subscriber" comprised "the data from [the subscriber's] own personal copy, made from the broadcast signals received from the particular antenna allotted to him." Id. at 437. Aereo argued that it did not "perform" copyrighted works because "Aereo's equipment simply respond[ed] to its subscribers' directives." Id. at 438. After noting that the statute's "language . . . does not clearly indicate when an entity 'performs,'" the Supreme Court determined—based on the statute's evident purpose—that "an entity that engages in activities like Aereo's performs." Id. at 438–49 (alterations omitted). Aereo also argued that it did not perform copyrighted works "publicly" because, technically, each performance was "capable of being received by one and only one subscriber." Id. at 445. The Supreme Court similarly rejected this argument as inconsistent with the statute's apparent "regulatory objectives." Id. at 446.

Aereo does not clearly contradict Perfect 10. As discussed above, Perfect 10 purported to interpret the statutory display right's "plain language." 508 F.3d at 1160. Indeed, Perfect 10's server test followed from the Ninth Circuit's synthesis of various statutory definitions relevant to the display right. See id. (citing 17 U.S.C. §§ 101, 106(5)). Aereo addressed different statutory language, relevant to the performance right, and acknowledged that this other language was ambiguous. See 573 U.S. at 439. To resolve that ambiguity, Aereo relied on legislative purposes unique to the performance right. See

4

id. at 440–43 (evaluating the specific legislative and statutory history underlying the modern performance right). Because Aereo addressed 17 U.S.C. § 106(4)'s ambiguous language, it is not clearly irreconcilable with Perfect 10's interpretation of 17 U.S.C. § 106(5)'s plain language. See 508 F.3d at 1160. That explains why, years after Aereo, the Ninth Circuit continues to apply Perfect 10's server test—including in an opinion published just this month. See, e.g., Bell v. Wilmott Storage Servs., LLC, 2021 WL 4097499, at *5 (9th Cir. 2021).

In Hunley's view, the Ninth Circuit's server test misinterprets the Copyright Act. See Opp. at 8. Hunley is free to present that argument to the Ninth Circuit and the Supreme Court. But this Court is not free to artificially narrow or overrule binding precedent.

*

For the foregoing reasons, the Court concludes that oral argument is unnecessary and grants Instagram's motion to dismiss. If Hunley wishes to file an amended complaint, Hunley may do so within 30 days of the date of this order.

**IT IS SO ORDERED.**

Dated: September 17, 2021

_____
CHARLES R. BREYER
United States District Judge