1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERA LLP**
Solomon B. Cera (SBN 099467)
Pamela A. Markert (SBN 203780)
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

**DUNCAN FIRM, P.A.**
James H. Bartolomei III (SBN 301678)
809 W. 3rd Street
Little Rock, AR 72201
Telephone: (501) 228-7600
Email: james@duncanfirm.com

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
Email: tfriedman@toddflaw.com
Email: abacon@toddflaw.com

**HOBEN LAW**
Bryan D. Hoben (Admitted *pro hac vice*)
1112 Main Street
Peekskill, NY 10566
Telephone: (347) 855-4008
Email: bryan@hobenlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS HUNLEY and MATTHEW SCOTT BRAUER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>INSTAGRAM, LLC,<br><br>Defendant. | Case No. 3:21-cv-03778-CRB<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>DATE:   JANUARY 28, 2022<br>TIME:   10:00 A.M.<br>CTRM:   6, 17TH FLOOR<br>JUDGE:   HONORABLE CHARLES R. BREYER |

# TABLE OF CONTENTS

**Page(s)**

SUMMARY OF ARGUMENT ............................................................................................ iv

I.      INTRODUCTION ................................................................................................... 1

II.     STATEMENT OF FACTS ...................................................................................... 2

III.    STANDARD OF REVIEW ..................................................................................... 3

IV.     ARGUMENT ........................................................................................................... 4

        A.      The Facts Alleged in The AC Make the Server Test Inapplicable To This Case .... 5

        B.      Possession of a Copyrighted Work is Not a Prerequisite for Finding Infringement of a "Display Right" as Other Courts Have Declined Applying the Server Test Under Substantially Similar Facts ............................................................................ 9

        C.      The Server Test's Evisceration of the Display Right is Inconsistent with the US Supreme Court's Intervening Decision in *Aereo* for The Performance Right ....... 12

V.      CONCLUSION ...................................................................................................... 14

1

**<u>TABLE OF AUTHORITIES</u>**

2

**CASES**

3

*American Broadcasting Companies, Inc. v. Aereo, Inc.*,

4

    573 U.S. 431 (2014) ........................................................................................ 4, 5

*American Broadcasting Cos. v. Aereo, Inc.*,

5

    134 S. Ct. 2498 (2014) ................................................................ iv, 12, 13, 14

6

*Arista Records, LLC v. Doe 3*,

7

    604 F.3d 110 (2d Cir.2010) ............................................................................. 4

8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................ 3

9

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544, 570 (2007) ................................................................................. 3

10

*Bell v. Wilmott Storage Servs., LLC*,

11

    12 F.4th 1065 (9th Cir. 2021) ....................................................................... 12

12

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,

    637 F.3d 1047 (9th Cir. 2011) ........................................................................ 3

13

*Cahill v. Liberty Mutual Ins. Co.*,

14

    80 F.3d 336 (9th Cir. 1996) ............................................................................ 3

15

*Capitol Records, LLC v. ReDigi Inc.*,

    934 F. Supp. 2d 640 (S.D.N.Y. 2013), aff'd, 910 F.3d 649 (2d Cir. 2018) ......... 4

16

*Carell v. Case Shubert*,

17

    104 F. Supp. 2d 236 (S.D.N.Y. 2000) ............................................................ 4

18

*Free Speech Sys., LLC v. Menzel*,

19

    390 F. Supp. 3d 1162 (N.D. Cal. 2019) ..................................................... iv, 11

20

*Hunley v. BuzzFeed, Inc.*,

    No. 1:20-CV-08844-ALC, 2021 WL 4482101 (S.D.N.Y. Sept. 30, 2021) .................. iv, 9

21

*Kelly v. L.L. Cool J.*,

22

    145 F.R.D. 32 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994) ...................... 4

23

*Leader's Institute, LLC v. Jackson*,

    2017 WL 5629514 (N.D. TX. Nov. 22, 2017) ................................................ 11

24

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,

25

    591 F.Supp.2d 1098 (N.D. Cal. 2008) ............................................................ 5

26

*N.Y. Times Co. v. Tasini*,

    533 U.S. 483 (2001) ...................................................................................... 12

27

*Nicklen v. Sinclair Broadcast Group, Inc., et al.*,

28

    2021 WL 3239510 (S.D.N.Y. July 30, 2021) ................................................ iv

*Perfect 10 v. Google, Inc.*,
    416 F. Supp. 2d 828 (C.D. Cal. 2006) ................................................................. 7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................. *passim*

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
    668 F.3d 1148 (9th Cir. 2012) ................................................................. 4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................................. 3

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ................................................................. 5

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) ................................................................. 3

**STATUTES**

17 U.S.C. § 101 ................................................................. 5, 10

17 U.S.C. § 106 ................................................................. 4

17 U.S.C. § 106(5) ................................................................. 1, 4, 9

**RULES**

Federal Rule of Civil Procedure

    Rule 12(b)(6) ................................................................. 3, 9

1

## SUMMARY OF ARGUMENT

2      Defendant Instagram, LLC's motion to dismiss (the "Motion") Plaintiffs' Amended

3  Complaint (the "AC") does not challenge the sufficiency of Plaintiffs' claims or show why the

4  factual allegations make dismissal premature in an otherwise undeveloped record. The AC

5  establishes that there is a clear conflict in Instagram's instruction and warning that embedders

6  (such as BuzzFeed or Time) need to obtain permission from the copyright holder for embedding a

7  photo consistent with Instagram's Terms of Use & Platform Policy (which does not contemplate

8  or refer to any of the principles found in the "Server Test"[1]); that the Copyright Act does not

9  predicate the infringement of a copyright holder's exclusive "display right" upon the alleged

10  infringer's possession of a copy of the work; that no court has applied the Server Test beyond

11  search engine cases; and that no court has applied the Server Test to a social media platform that

12  is alleged to encourage website publishers to embed copyrighted materials. *See, e.g., Hunley v.*

13  *BuzzFeed, Inc.,* No. 1:20-CV-08844-ALC, 2021 WL 4482101, at *4 (S.D.N.Y. Sept. 30, 2021),

14  *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162 (N.D. Cal. 2019); *Goldman v. Breitbart*

15  *News Network, LLC*, 302 F. Supp. 3d 585 (S.D.N.Y. 2018); *Nicklen v. Sinclair Broadcast Group,*

16  *Inc*., *et al*., 2021 WL 3239510 (S.D.N.Y. July 30, 2021).

17      Critically, the Server Test's principals are factually and logically disconnected from the

18  lack of requirement of a possession of a copy of a copyrighted work as found in the clear, plain

19  statutory text of the Copyright Act for the display right, which has the equal force as all the

20  bundles of rights including the public performance right analyzed in *American Broadcasting Cos.*

21  *v. Aereo, Inc*., 134 S. Ct. 2498 (2014). The legislative history of the Copyright Act for the

22  "display" right indisputably is consistent that having possession of copy of the work is not a

23  prerequisite to infringing the display right of that work. Finally, this case is distinguishable from

24  *Perfect 10* as the court did not take into account the public viewer's perception of the work and

25  did not address that possession of a copy of the work under language of the Copyright Act is

26  unnecessary to trigger an infringment of the display right. Plaintiffs have sufficiently plead a

27  prima facie case of copyright infringement and should be permitted to proceed with discovery.

28

---

[1] *Perfect 10, Inc. v. Amazon.Com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).

1    **I.    INTRODUCTION**

2         Instagram should not be permitted to avoid liability for its alleged conduct of encouraging,

3    assisting, and facilitating third parties' use of Instagram's "embedding" tool to cause the

4    unauthorized display of Instagram users' copyrighted works onto third-party publishers' websites.

5    Viewing the facts set forth in the AC in the light most favorable to them, Plaintiffs have plausibly

6    alleged that when a third-party website publisher embeds copyrighted works from Instagram

7    without authorization intending to display the copyrighted photo to that website's viewers,

8    Instagram participates in the violation of Plaintiffs' display right. Instagram does not challenge

9    the sufficiency of the allegations underlying Plaintiffs' claims, nor does it suggest that secondary

10   liability does not exist for those who, like Instagram, facilitate the misappropriation of intellectual

11   property rights. Rather, the sole basis for its second Motion lies in its misguided and overreaching

12   reliance on, and misapplication of, and expansion of the so-called "Server Test" set forth in

13   *Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10*"), a case that

14   was decided three years before Instagram launched in 2010 and before the embed tool was

15   created as "a behind the scenes means or device" that causes a display of photos.

16        Dismissal here would allow factual disputes to be construed in Instagram's favor and

17   endorse the tech industry giant for: (1) taking contradictory public positions related to embedding

18   copyrighted content without permission by third parties which, at this pre-discovery stage of the

19   case, improperly gives Instagram – and not Plaintiffs – the benefit of the doubt as to this fact

20   issue; (2) ignoring the fact that in Section 106(5) of the Copyright Act, its legislative history, or in

21   any case in which the statute is litigation, is a display right infringement predicated on the

22   infringing party's possession of a copy of the work, meaning that an embedding party's

23   possession of a work is immaterial to their accomplishing the infringement; and (3) improperly

24   expanding the Server Test beyond its traditional application to the automated, utilitarian showing

25   of copyrighted works in search engine results to now apply to online media companies

26   intentionally embedding copyrighted works to entertain their readers and increase revenue by

27   using pirated copyrighted content rather than pay for licensing fees.

28

In short, the Terms of Use/Platform policy (¶67)[2], public admonitions to embedders, the lack of possession of a work requirement in the Copyright Act plain language and the viewer's perspective are all fact issues that defeat the Motion and the application of the Server Test. Accordingly, the Motion should be denied.

## II.    STATEMENT OF FACTS

Plaintiffs filed this class action on behalf of themselves and other similarly situated persons and entities whose registered copyright works were uploaded to Instagram and subsequently caused to be displayed on third-party website publishers without their permission using Instagram's embedding tool to cause each display. ¶88. Plaintiffs allege claims for Inducement of Copyright Infringement, Contributory Copyright Infringement, and Vicarious Copyright Infringement. ¶¶94-121.

Plaintiffs' well-pled AC alleges facts that each Plaintiff owns validly registered photos that were posted to their respective Instagram accounts and at some point, those photos were separately embedded by Time.com and Buzzfeed.com from Instagram without authorization from Plaintiffs, thereby violating the display right. ¶¶1-11. While the third-party website's acts are wrongful as alleged, this case solely seeks to expose the core root of the problem: Instagram itself as secondary infringers. Plaintiffs further allege that Instagram created and encouraged the use of its embedding tool to generate significant revenue. ¶1. Instagram encouraged copyright holders to publish their valuable copyrighted works on Instagram (we respect copyright!) and intended for third party publisher websites to use the embedding tool to display copyrighted works without permission from their holders, or from Instagram itself. ¶¶61-63. In other words, Instagram encouraged its users such as Plaintiffs to upload their photos to Instagram's servers and at the same time Instagram regularly and systematically solicited third party website publishers to embed those images, thereby infringing each copyright holder's exclusive display right. ¶8.

Only in June 2020, after a seven-year period of reckless disregard for copyright owners or operating in a gray area to its advantage, did Instagram publicly admit that third parties [always

---

[2] All references hereafter to "¶ __" are to paragraphs of the Amended Complaint ("AC") ECF No. 28.

had since 2013] required a license or permission from copyright holders to embed copyrighted works. ¶7. Nonetheless, at all relevant times, Instagram also failed to provide copyright holders any means or tools to identify or search for potential infringements of their works facilitated by the embedding tool. ¶¶9-10, 70. Instagram's actions secondarily violated Plaintiffs' exclusive display rights, for Instagram's financial benefit, and allowed third party publishers to freely embed copyrighted works onto their websites without paying licensing fees or obtaining the requisite permission from the holder or Instagram. ¶¶5, 69.

Instagram also intentionally and systematically handled, controlled, and used valuable copyrighted works with the intent and knowledge that third party website publishers were embedding those works without ever obtaining a license from the copyright owners, which in turn created significant revenue for Instagram arising from the known infringing activity of third parties. *Id*. The causes of action for secondary liability are properly alleged against Instagram and the Motion should accordingly be denied.

## III.    STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is properly granted only where the complaint fails to assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (plausibility standard does not require "the who, what, when, where and how of the misconduct alleged."). Nor is "[t]he standard at this stage...that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* at 556).

On a Rule 12(b)(6) motion, courts are to accept well pled factual allegations as true, drawing all reasonable inferences in the favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). If the Court grants a motion to dismiss, but the complaint can be amended, the Court should grant leave to amend. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).

Plaintiffs have properly alleged the requisite primary copyright infringements. "To establish a prima facie case of copyright infringement, a plaintiff must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012). Allegations must include "(1) which original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) 'by what acts during what time' the defendant infringed the copyright." *Carell v. Case Shubert*, 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000) (quoting *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994)). Plaintiffs have pled all necessary elements to establish an underlying copyright infringement claim against BuzzFeed and Time. ¶¶94-121. As explained below, the secondary liability allegations are sufficient as well.

## IV.   ARGUMENT

Plaintiffs plausibly plead that each of the third-party publishers such as Time and BuzzFeed displayed Plaintiffs' copyrighted photographs in violation of the Copyright Act. Section 106(5) of the Copyright Act (the "Act") grants copyright owners the exclusive public display right and control of the economic value of their work. *Id.* "Public display includes 'show[ing] a copy of [a work], either directly or by means of a film, slide, television image, **or any other device or process**.' *Id*. § 101." *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640, 652 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018) (emphasis added).

Plaintiffs establish *prima facie* copyright infringement based on the presumption of ownership of validly registered copyrighted photographs and BuzzFeed and Time's unauthorized displays of these copyrighted works. ¶¶12-13, 94-121. "The owner of a copyright has the exclusive right to – or to license others to – reproduce, perform publicly, **display** publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir.2010) (citing 17 U.S.C. § 106); *see also American Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014);[3] *Sybersound Records, Inc. v.*

---

[3] Despite technological complexity concerning the "behind-the-scenes" delivery of images, a defendant violates the exclusive right to "show [an audiovisual work's] images in any sequence,"

1    *UAV Corp*., 517 F.3d 1137, 1145 fn. 3 (9th Cir. 2008). Plaintiffs thus satisfy all requirements for

2    establishing primary copyright violations of Primary Infringers.

3         Unsurprisingly, Instagram does not challenge the sufficiency of the AC's allegations in

4    this regard. Rather, its entire argument is founded on a rights-grabbing expansion and

5    misapplication of the Server Test to facts that do not apply here or are in dispute. Instagram

6    makes no effort to explain why the alleged facts support dismissal, essentially arguing that the

7    facts do not matter because of the Server Test. Courts in the Ninth Circuit and others have

8    rightfully either been skeptical of endorsing an expansion of the Server Test beyond search

9    engines or outright rejected its application for embedded copyrighted works for social media

10   platforms. This is because expanding the Server Test, already widely viewed as a "rights

11   grabbing" legal machination, beyond its current confines conflicts with the plain statutory

12   language and legislative objective of the Copyright Act, leading to inequitable results, and a

13   violation of both the letter and the spirit of the Act.

14        Plaintiffs do not attempt to overrule the Server Test. Rather, they seek an outcome

15   consistent with the Copyright Act wherein the Server Test remains limited to its historic search

16   engine context and Instagram is held to an equitable standard when it comes to the rights of its

17   users and embedders. To do otherwise would essentially approve Instagram's conduct of taking

18   contradictory positions, thereby improperly robbing Plaintiffs from the benefit of the doubt on

19   factual disputes at the pleading stage.

20        **A.      The Facts Alleged in The AC Make the Server Test Inapplicable To This Case**

21        "All theories of secondary liability for copyright and trademark infringement require some

22   underlying direct infringement by a third party." *Louis Vuitton Malletier, S.A. v. Akanoc*

23   *Solutions, Inc*., 591 F.Supp.2d 1098, 1104 (N.D. Cal. 2008). Despite it being facially apparent

24   from the AC that Plaintiffs' copyrights were publicly displayed and shown by third parties

25   publishers without authorization or a license, and that Instagram provided the "means or device"

26   by which such infringement would occur, thereby participating in the infringements, Instagram

27
     because "whether Aereo transmits from the same or separate copies, it ... shows the same images
28   and makes audible the same sound." **To "show a copy" is to display it**. *Am. Broad. Companies,*
     *Inc. v. Aereo, Inc.*, 573 U.S. 431, 441-48 (2014), citing 17 U.S.C. § 101.

1  nevertheless asks this Court to dismiss this case by construing facts in dispute in Instagram's

2  favor, not Plaintiffs. Instagram maintains that this case is solely about the "embedding process"

3  and impliedly suggests that none of the other facts of the case are relevant for determining

4  application of the Server Test such as what Instagram's Terms of Use state (which are a contract

5  between Plaintiff and Instagram) or Instagram's public instructions to third party embedders such

6  as BuzzFeed (to obtain all necessary rights based on the Platform Policy) (AC at ¶67), or the

7  perspective of the viewer (who sees the copyrighted work the same regardless of where a copy of

8  the work is stored), or even the fact that BuzzFeed and Facebook *may actually share a server*.[4]

9  Despite Instagram's insistence to the contrary, the facts do matter here.

10  Instagram wholly relies on *Perfect 10*'s Server Test in asking this Court to conclude that

11  BuzzFeed and Time's conduct was protected because each did not directly possess a copy of the

12  file of Plaintiffs' photos when using Instagram's embedding tool to display Plaintiffs'

13  copyrighted photos on their websites without permission. However, the Ninth Circuit has not

14  drawn a bright line, and a closer reading of *Perfect 10* supports a narrower application here to the

15  facts as alleged, especially given the contradictions in Instagram's Terms of Use/Platform Policy

16  and public instructions to embedders.

17  In *Perfect 10*, the Ninth Circuit considered a claim of direct infringement of the display

18  right against Google based on the operation of Google Image Search, which is essentially a search

19  engine for photos that are displayed on third party websites. Google used "in-line linking" to

20  display full-size, infringing copies of photos in its search results that were sourced from third-

21  party websites where possession of copies of the photos were physically stored. *Perfect 10*, 508

22  F.3d at 1155-56. Although Google did not have possession of a copy of the file of the photo itself,

23  the HTML code on Google's webpage directed the user's web browser to retrieve a display of the

24  photo from a third-party site and showed those photos in the user's browser window. *Id*. at 1156.

25  From a user's perspective, the "window appear[ed] to be filled with a single integrated

26  presentation." In actuality, however, the window displayed a photo that was hosted on a third-

27

28  [4] *See* https://www.vox.com/2015/3/24/11560666/jonah-peretti-explains-why-buzzfeed-is-happy-to-cut-a-theoretical.

1    party website, framed by content from Google's own website. *Id.*

2        Under these facts, the Ninth Circuit held that *Perfect 10* made a "prima facie case that

3    Google's communication of its stored thumbnail images directly infringes Perfect 10's display

4    right," but that Google did not display the images at issue because its computers "d[id] not store

5    the photographic images" themselves. *Id*. at 1160. With no attempt to square its reasoning with

6    the Copyright Act's plain language reflecting the original intent of Congress, the Ninth Circuit

7    found that Google's use of HTML instructions to "direct a user's browser to a website publisher's

8    computer that stores the full-size photographic image" was "not equivalent to showing a copy,"

9    even if the image appeared to the user as part of the Google website. *Id.* at 1161.

10        *Perfect 10's* reasoning was highly fact-driven and inapplicable here with regard to

11    Instagram, a social media photo sharing platform which did not exist in 2007. In *Perfect 10*, the

12    technology at issue was the operation of a search engine (i.e., online library of copyrighted

13    works), the express purpose the Court described as facilitating access and directing users to other

14    locations on the Internet. In the underlying district court opinion, Google Image Search operated

15    "[m]erely to index the web so that users can more readily find the information they seek," it

16    "should not constitute direct infringement." *Perfect 10 v. Google, Inc*., 416 F. Supp. 2d 828, 844

17    (C.D. Cal. 2006), *aff'd in relevant part sub nom.*, *Perfect 10*, 508 F.3d 1146; *see also Perfect 10*,

18    508 F.3d at 1154 (describing the case as involving "efforts to stop an Internet search engine from

19    facilitating access to infringing images"). As the District Court viewed it, application of a "Server

20    Test" in that context would "maintain […], however uneasily, the delicate balance for which

21    copyright law strives – i.e., between encouraging the creation of creative works and encouraging

22    the dissemination of information." *Perfect 10*, 416 F. Supp. 2d at 844.

23        The *Perfect 10* district court implied that its endorsement of the Server Test was a <u>policy</u>

24    <u>judgment</u> and did not hold that the test was appropriate for the facts of every case. In adopting the

25    test, the District Court expressly acknowledged that application of the test was "**susceptible to**

26    **extreme or dubious results**." *Perfect 10 (Google)* at 839. Significantly, the Court acknowledged

27    that Google and Amazon did not host the offending material, they merely operated search engines

28    whereby Internet users could search for content and potentially access third party websites of

1   entities which themselves were misappropriating the copyrighted material. *Id.*

2   Importantly, the Server Test, as applied in *Perfect 10,* was not used as the means by which

3   secondary liability (*i.e.,* the liability sought to be imposed by Plaintiffs in the case at bar) could be

4   avoided. Rather, there, direct infringement was "undisputed." *Perfect 10*, 508 F.3d at 1169-70.

5   Accordingly, the infringement question presented in *Perfect 10* concerned matters not raised in

6   Instagram's Motion, namely whether there was contributory or vicarious infringement. Instagram

7   does not challenge these allegations because Plaintiffs have sufficiently pled secondary liability

8   arising from Instagram's conduct. As discussed below, BuzzFeed is alleged to have committed

9   direct copyright infringement violating Hunley's display right in a case still pending in the

10  Southern District of New York, where the court declined to dismiss the case based on the Server

11  Test's inapplicability in the Second Circuit.

12  Instagram does not function like a search engine such as Google. The primary

13  infringements alleged here did not involve automated, algorithmic cataloging of content stored on

14  third party servers for the express purpose of facilitating revenue generating traffic; they were the

15  product of individual, intentional acts of website publishers who sought out each photo's unique

16  embed code and copy/pasted the code into their websites' content management system for the

17  explicit purpose of showing the Plaintiffs' copyrighted content to readers of posts or articles

18  found on their commercial websites. Instagram was actively involved in this process because its

19  servers housed that copyrighted content, its embedding technology facilitated the contents'

20  display on third party websites, and it solicited this very behavior from these publishing outlets.

21  *See* AC. ¶¶38-86.

22  Beyond technology or functionality, the perception of the viewer is relevant when

23  contemplating the difference between embedding a protected work into a website post or article

24  and showing search results (based on key words or photographic search technology) into a search

25  engine result. An image embedded into a list of search engine results is tiny, typically a

26  "thumbnail" sized version of the image, which is generally unsuitable for any purpose beyond

27  guiding the viewer to navigate their web browser to the place the image is actually hosted so that

28  they may have a closer look at the full size image. An image embedded into a post or article from

1    somewhere like Instagram is generally displayed in full within the post or article just like any

2    other visual aid it may employ. Viewers need not navigate elsewhere on the internet to properly

3    experience the full size image.

4         In sum, *Perfect 10* is factually distinguishable and different from this case and the Server

5    Test should not be expanded beyond the facts of *Perfect 10*. Instagram's Terms of Use is factually

6    at issue (Plaintiff is a party to the Terms of Use) as well its public admissions regarding

7    embedding (BuzzFeed is a party to Instagram's platform policy), whether Instagram shares a

8    server with a number of third party websites, including BuzzFeed, and why the viewer's

9    perspective is factually relevant as alleged. Applying the Server Test results in a "dubious or

10   susceptible" outcome outside of search engines, giving Instagram a windfall of valuable content

11   that Instagram intended third party website publishers to share the benefit of Plaintiff's photos.

12   **B.      Possession of a Copyrighted Work is Not a Prerequisite for Finding
             Infringement of a "Display Right" as Other Courts Have Declined Applying**

13   **the Server Test Under Substantially Similar Facts.**

14        The Copyright Act does not require an infringer to be in possession of a copy of a

15   protected work to accomplish its infringement of that work. Neither the word nor the concept of

16   "possession" is found in 17 U.S.C. § 106(5), which defines the copyright holder's exclusive right

17   of display. Finding this to be a fatal flaw in the Server Test's logic, other courts, when presented

18   with facts similar to this case, have distinguished *Perfect 10* on such grounds. This Court should

19   do the same.

20        On September 30, 2021, the *Hunley* court denied BuzzFeed's 12(b)(6) motion that

21   embedding Hunley's photo from Instagram was fair use under the Server Test, the very same

22   photo in this case. *Hunley v. BuzzFeed, Inc.*, No. 1:20-CV-08844-ALC, 2021 WL 4482101, at *4,

23   n.4 (S.D.N.Y. Sept. 30, 2021) (denying that embedded photographs cannot be the subject of

24   copyright infringement claims under a fair use defense that the Server Test applies).[5]

25        In July 2021, Judge Rakoff of the Southern District of New York, issued an opinion and

26   order denying Defendant Sinclair's motion to dismiss a case addressing a substantially similar

27   ───────────────────────
     [5] Plaintiffs acknowledge that the Server Test has never been applied in the Second Circuit and

28   also acknowledge that Instagram's Terms of Use require all copyright infringement claims be
     filed in federal court in California.

1   issue as to whether embedding a copyrighted video from Facebook violated the display right

2   under the Copyright Act. *See Nicklen v. Sinclair Broadcast Group, Inc., et al.,* 2021 WL 3239510

3   (S.D. N.Y. July 30, 2021). The court found that the defendants were plausibly in violation of

4   Plaintiff Nicklen's display right as alleged in his complaint for their infringing acts of using

5   Facebook's embedding tool to publish a copyrighted video on numerous third-party websites

6   without authorization from the copyright holder. *Id*. at *7. Defendants argued, under the Server

7   Test born in *Perfect 10*, that because each website did not store or possess the video file on any of

8   the Sinclair Defendants' servers, but instead only used the Facebook embed tool, they did not

9   "display" the video within the meaning of the Copyright Act. *Id*. at *4. The court disagreed, in

10   pointed fashion. Judge Rakoff ruled that under the <u>plain language</u> of the Act, "[t]o 'display' a

11   work means to show a copy of it, either directly or by means of a film, slide, television image, or

12   any other device or process or, in the case of a motion picture or other audiovisual work, to show

13   individual images nonsequentially." *Id*. at *3, citing 17 U.S.C. § 101. The *Nicklen* court

14   concluded that under a plain, textual analysis, "a defendant violates an author's exclusive right to

15   display an audiovisual work publicly when the defendant without authorization causes a copy of

16   the work, or individual images of the work, to be seen – whether directly or by means of any

17   device or process known in 1976 or developed thereafter," and held that the statute was and

18   should be *technologically neutral.* Under this reasoning, "[t]he Copyright Act's text and history

19   establish that embedding a video on a website 'displays' that video, because to embed a video is

20   to show the video or individual images of the video nonsequentially by means of a device or

21   process." *Id*.

22          The *Nicklen* court found the Server Test to be contrary to the text and legislative history of

23   the Copyright Act for a number of powerfully persuasive reasons related to a social media

24   platform, including "Congress's endeavor to ensure that the full 'bundle' of exclusive rights will

25   address evolving modes of exploitation of works." *Id.* (citation omitted). Notable, however, were

26   the distinguishing facts that the court observed should limit the *Perfect 10* holding to search

27   engines: "(1) the defendant operated a search engine and (2) the copyrighted images were

28   displayed only if a user clicked on a link." *Id.* (citing *Goldman v. Breitbart News Network, LLC*,

302 F. Supp. 3d 585, 595 (S.D.N.Y. 2018) (distinguishing *Perfect 10* on these grounds in which a photo of football star Tom Brady was embedded from Twitter onto numerous media websites and the Server Test was not applied to embedding)). "An individual still image from the Video awaits Sinclair readers whether they click the image to play the video or not. Thus, *Perfect 10*'s test is a poor fit for this case, and the Court declines to adopt it." *Id*. Applying the Server Test to absolve Instagram here, as with *Nicklen* regarding Instagram's parent, Facebook (which uses the same embed code technology), would wholly undermine the exclusive display right and expand the Server Test to social media platforms beyond search engines.

Recently, a court in this district found defendant's reliance on *Perfect 10* problematic since they could not cite any "case applying the *Perfect 10* Server Test outside of the context of search engines" such as Google. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1172 (N.D. Cal. 2019) (Orrick, J.). This is because there are no cases. Instagram would be the first. In *Leader's Institute, LLC v. Jackson*, 2017 WL 5629514 (N.D. TX. Nov. 22, 2017), the court distinguished *Perfect 10* on nearly identical grounds. The court observed that displaying copyrighted works online through a method similar to embedding where users would visibly see copyrighted material on the infringers' web domain, was substantively different from a mere hyperlink that required additional user action to access and view the copyrighted work, and declined to expand the Server Test. *Leader's Institute* at *11.

In another similar recent case involving a social media platform and website publishers, *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d at 595, the court directly addressed the embed question in a copyright holder's favor by holding, "when defendants caused the embedded Tweets to appear on their websites, their actions violated plaintiff's exclusive [copyright] display right; the fact that the image was hosted on a server owned and operated by an unrelated third party (Twitter) does not shield them [the Primary Infringers] from this result." *Id*. at 586. "Most importantly, nowhere in the plain textual reading of the Copyright Act is "**possession of work**" mentioned – contrary to the "Server Test" – "as a prerequisite for infringement." *Id*. at 592. As *Goldman* held, neither "the text or purpose of the Copyright Act suggest[s] that physical possession of an image is a necessary element to its display for purposes

1   of the Act." *Id*. at 594.[6] While the Ninth Circuit still acknowledges the existence of the Server

2   Test, the recent case referenced by this court in the order [ECF 27] does not appear to apply the

3   Server Test in the context of embedding within social media or even a search engine, but instead

4   dealt with *de minimis* infringement and direct display of a photo on a pinpoint site address. *Bell v.*

5   *Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1073 (9th Cir. 2021) (Finding that even though a

6   member of the public could not access the photo by simply visiting Defendant's website,

7   Defendant's server was continuously transmitting the image to a specific pinpoint address not

8   easily searchable). That court only mentioned that the Server Test exists but not for the reasons

9   that apply to Instagram and embedding.

10      What is clear from these decisions is that the Ninth Circuit's 2007 Server Test was a

11   policy-driven and fact-driven doctrine not found in the plain text or the logic of the Copyright Act

12   and only should be narrowly limited to its facts. Because <u>possession of a copy is not a</u>

13   <u>requirement</u> under the Act or found in the legislative history, there is no sound legal, factual, or

14   policy justification for accepting Instagram's invitation to expand the Server Test outside of

15   search engines like Google. Instagram's Motion presents no authority or factual excuse for such

16   an expansion. Accordingly, the Motion should be denied.

17      **C.      The Server Test's Evisceration of the Display Right is Inconsistent with the US**

18              **Supreme Court's Intervening Decision in *Aereo* for The Performance Right**

19      The Ninth Circuit's 2007 decision in *Perfect 10* is not only inconsistent with the plain

20   language of the Copyright Act, and inapplicable to the facts of this case, but it also runs contrary

21   to subsequent Supreme Court authority that rejected the very sort of technical distinctions that

22   underpinned the Server Test in the first instance or the "behind the scenes" technicalities. In

23   *American Broadcasting Cos. v. Aereo, Inc*., 134 S. Ct. 2498 (2014), the Court considered claims

24   under the Copyright Act's public performance right, which has the same, equal value and weight

---

25   [6]  The *Goldman* reading is consistent with the Supreme Court's admonition that, to determine

26   whether a work is infringed under the Copyright Act, a court must "focus on the [work] as presented
    to, and perceptible by" the public. *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 499 (2001). For purposes

27   of the display right, then, it is the viewer's experience that matters, <u>not</u> the internal mechanics of
    how the content is stored or retrieved. Here, Instagram ignores the factual allegation that the public

28   viewer does matter.

as the display and is analogously interchangeable in the bundle of rights under the Act. In *Aereo*, an Internet-based re-transmitter of over-the-air television signals argued that it did not "perform the copyrighted work publicly" because each transmission came from a miniature antenna assigned to each individual user and, therefore, was a "private" rather than "public" performance. *Id*. at 2507-08. The Court wholly rejected that argument, noting that the technical difference "**means nothing to the subscriber. It means nothing to the broadcaster. We do not see how this single difference, invisible to subscriber and broadcaster alike, could transform a system" from infringing to non-infringing**. *Id*. at 2507 (emphasis added). "Viewed in terms of Congress' regulatory objectives," the Court asked rhetorically, "*why should any of these technological differences matter*?" *Id*. at 2508. *Aereo* therefore provides that it is a practical, functional perspective, and not hyper technicalities, that determine whether a particular mode of content delivery is infringing or not. The performance right could easily be exchanged out for the display right here. To hold otherwise would ignore that the bundle of rights all operate in conjunction with each other. If this case involved streaming videos (similar to the broadcasting of content occurring in *Aereo* using transmission came from a miniature antenna for each viewer) rather than still photographic images, Instagram's embedding tool for third party website publishers to "perform" those streaming videos would be infringements under the Act.

*Perfect 10* and its Server Test are inconsistent with the holding of *Aereo* as the display right and the performance are equal under the Act. Where a social media platform purposely constructs its technology to allow and encourage third party website publishers to show a copyrighted photo as part of that website's article -- whether through HTML instructions, embed code, magic wizard or fairy dust, or "any other device or process" that has not yet been invented by ingenious and profit-driven tech companies like Facebook or Instagram – it is the website publisher's actions and ultimately the reasonable viewer's perception that matters factually, regardless of the physical location of the photo being displayed or whether Instagram or the website publisher possesses a copy of the photo. Without necessary permissions from the copyright holder, Instagram's embed tool was built to infringe and represents a "rights grab" that should be trumped by the Copyright Act's exclusive bundle of rights and the analogous reasoning

found in *Aereo*. Finally, the Copyright Act, its legislative history and congressional intent, read along with the reasoning in *Perfect 10* and *Aereo*'s performance right analysis, create at worst, ambiguities related to whether the performance right holds the same weight and logically the same analysis as the display right, and at best should be resolved in favor of Plaintiff copyright holders at this stage to better develop a record for a case that is destined for appeal regardless of how the Court decides.

## V.   CONCLUSION

Instagram's Motion provides no credible support in fact, law, or policy argument to maintain that the Server Test applies to embedding a copyright holder's photo from Instagram onto a third-party website such as BuzzFeed.com. Nowhere in the Copyright Act's plain text, legislative history, and congressional intent is <u>possession of a copyrighted work</u> by an infringer a necessary requirement to trigger the display right. Instagram's expansion of the Server Test would lead to absurd, dubious, susceptible, and inequitable results, where the display right would become extinguished, neutering one of the Act's exclusive rights. Enablers of infringements, such as Instagram, and the third-party online website publishers benefitting from the value of embedding, will continue to reap the value of copyrighted photos by merely providing a hyper-technical liability shelter of judicial creation that should only be limited to search engines such as Google. Visually, functionally, and practically, there is no difference whatsoever from the viewer's perspective between the embedded photos on BuzzFeed or Time's websites and a scenario where the very same website has physical possession of a copy of the photo's file for display of the same photo. An ordinary Internet viewer does not know or care about the technical differences behind the scenes. And neither should this Court.

Plaintiffs respectfully submit that the Court should deny the Motion. Alternatively, should the Court grant some or all of the Motion, Plaintiffs request leave to amend.

Dated: December 17, 2021                    Respectfully submitted,

                                             CERA LLP

                                             By: /s/ *Solomon B. Cera*
                                             Solomon B. Cera

1
2
3
4

Pamela A. Markert
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 977-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

5
6
7
8

**DUNCAN FIRM, P.A.**
James H. Bartolomei III
809 W. 3rd Street
Little Rock, AR 72201
Telephone: (501) 228-7600
Email: james@duncanfirm.com

9
10
11
12

**HOBEN LAW**
Bryan D. Hoben (admitted *pro hac vice*)
1112 Main Street
Peekskill, NY 10566
Telephone: (347) 855-4008
Email: bryan@hobenlaw.com

13
14
15
16
17

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd Friedman
Adrian R. Bacon
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
Email: tfriedman@toddflaw.com
Email: abacon@toddflaw.com

18
19

*Attorneys for Plaintiffs and the Proposed Class*

20
21
22
23
24
25
26
27
28

- 15 -