1    DURIE TANGRI LLP
     RAGESH K. TANGRI (SBN 159477)
2    rtangri@durietangri.com
     JOSEPH C. GRATZ (SBN 240676)
3    jgratz@durietangri.com
     ANNIE A. LEE (SBN 328802)
4    alee@durietangri.com
     217 Leidesdorff Street
5    San Francisco, CA  94111
     Telephone:    415-362-6666
6    Facsimile:    415-236-6300

7    DURIE TANGRI LLP
     ALLYSON R. BENNETT (SBN 302090)
8    abennett@durietangri.com
     953 East 3rd Street
9    Los Angeles, CA 90013
     Telephone:    213-992-4499
10   Facsimile:    415-236-6300

11   Attorneys for Defendant
     INSTAGRAM, LLC
12

13                    IN THE UNITED STATES DISTRICT COURT

14                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

15                            SAN FRANCISCO DIVISION

16   ALEXIS HUNLEY, et al.,                Case No. 3:21-cv-03778-CRB

17                        Plaintiffs,      **DECLARATION OF ANNIE A. LEE IN
                                           SUPPORT OF REPLY IN SUPPORT OF
18           v.                            MOTION TO DISMISS FIRST AMENDED
                                           COMPLAINT**
19   INSTAGRAM, LLC,
                                           Date:    January 28, 2022
20                        Defendant.       Time:    10:00 A.M.
                                           Ctrm:    6
21                                         Judge:   Honorable Charles R. Breyer

22

23

24

25

26

27

28

I, Annie A. Lee, declare as follows:

1.      I am a lawyer at Durie Tangri LLP, counsel of record for Defendant Instagram, LLC in the above-captioned matter.  I submit this declaration in support of Defendant's Reply In Support Of Motion to Dismiss Plaintiffs' First Amended Complaint.

2.      Attached as **<u>Exhibit 3</u>** is a true and correct copy of a redline comparing Plaintiffs' Memorandum of Law in Opposition to Defendants Motion to Dismiss First Amended Complaint (ECF No. 32) with Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (ECF No. 25) prepared using Adobe Acrobat's "Compare Documents" function.  Exhibits 1 and 2 were attached to the Declaration of Allyson R. Bennett In Support Of Defendant's Motion to Dismiss Complaint (ECF No. 16-1) and the Declaration of Annie A. Lee In Support Of Reply Memorandum Of Points And Authorities In Support Of Defendant Instagram, LLC's Motion To Dismiss Complaint (ECF No. 26-1), respectively.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 14th day of January, 2022, at San Francisco, California.


                                                              */s/ Annie A. Lee*
                                                              ANNIE A. LEE

DECLARATION OF ANNIE A. LEE IN SUPPORT OF REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT / CASE NO. 3:21-CV-03778-CRB

# EXHIBIT 3

Summary
12/22/2021 9:35:13 AM

Differences exist between documents.

**New Document:**
2021.12.17 dkt 032 Pl Memo of Law in Opp to Def MTD
20 pages (341 KB)
12/22/2021 9:35:05 AM
Used to display results.

**Old Document:**
2021.08.23 dkt 025 Pl Memo of Law in Opp to Def MTD
20 pages (334 KB)
12/22/2021 9:35:05 AM

Get started: first change is on page 1.

No pages were deleted

**How to read this report**

Highlight indicates a change.
Deleted indicates deleted content.
▲ indicates pages were changed.
⇔ indicates pages were moved.

**CERA LLP**
Solomon B. Cera (SBN 099467)
Pamela A. Markert (SBN 203780)
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 777-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
Email: tfriedman@toddflaw.com
Email: abacon@toddflaw.com

**DUNCAN FIRM, P.A.**
James H. Bartolomei III (SBN 301678)
809 W. 3rd Street
Little Rock, AR 72201
Telephone: (501) 228-7600
Email: james@duncanfirm.com

**HOBEN LAW**
Bryan D. Hoben (Admitted *pro hac vice*)
1112 Main Street
Peekskill, NY 10566
Telephone: (347) 855-4008
Email: bryan@hobenlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ALEXIS HUNLEY and MATTHEW SCOTT BRAUER, Individually and On Behalf of All Others Similarly Situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>INSTAGRAM, LLC,<br><br>     Defendant. | Case No. 3:21-cv-03778-CRB<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>DATE: JANUARY 28, 2022<br>TIME: 10:00 A.M.<br>CTRM: 6, 17TH FLOOR<br>JUDGE: HONORABLE CHARLES R. BREYER |

# <u>TABLE OF CONTENTS</u>

<u>**Page(s)**</u>

SUMMARY OF ARGUMENT ................................................................................................ iv

I.     INTRODUCTION ..................................................................................................... 1

II.    STATEMENT OF FACTS ........................................................................................ 2

III.   STANDARD OF REVIEW ...................................................................................... 3

IV.   ARGUMENT ............................................................................................................ 4

      A.    The Facts Alleged in The AC Make the Server Test Inapplicable To This Case .... 5

      B.    Possession of a Copyrighted Work is Not a Prerequisite for Finding Infringement of a "Display Right" as Other Courts Have Declined Applying the Server Test Under Substantially Similar Facts ................................................................................. 9

      C.    The Server Test's Evisceration of the Display Right is Inconsistent with the US Supreme Court's Intervening Decision in *Aereo* for The Performance Right ....... 12

V.    CONCLUSION ......................................................................................................... 14

PLAINTIFFS' OPPOS. TO MOTION TO DISMISS            CASE NO. 3:21-CV-03778-CRB

# TABLE OF AUTHORITIES

**CASES**

*American Broadcasting Companies, Inc. v. Aereo, Inc.*,
573 U.S. 431 (2014) ............................................................................... 4, 5

*American Broadcasting Cos. v. Aereo, Inc.*,
134 S. Ct. 2498 (2014) ............................................................. iv, 12, 13, 14

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir.2010) .......................................................................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) .................................................... 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) ............................................................................. 3

*Bell v. Wilmott Storage Servs., LLC*,
12 F.4th 1065 (9th Cir. 2021) ..................................................................... 12

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*,
637 F.3d 1047 (9th Cir. 2011) ...................................................................... 3

*Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .......................................................................... 3

*Capitol Records, LLC v. ReDigi Inc.*,
934 F. Supp. 2d 640 (S.D.N.Y. 2013), aff'd, 910 F.3d 649 (2d Cir. 2018) ......... 4

*Carell v. Case Shubert*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000) ........................................................... 4

*Free Speech Sys., LLC v. Menzel*,
390 F. Supp. 3d 1162 (N.D. Cal. 2019) ................................................... iv, 11

*Hunley v. BuzzFeed, Inc.*,
No. 1:20-CV-08844-ALC, 2021 WL 4482101 (S.D.N.Y. Sept. 30, 2021) ......... iv, 9

*Kelly v. L.L. Cool J.*,
145 F.R.D. 32 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994) ..................... 4

*Leader's Institute, LLC v. Jackson*,
2017 WL 5629514 (N.D. TX. Nov. 22, 2017) ............................................... 11

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
591 F.Supp.2d 1098 (N.D. Cal. 2008) ........................................................... 5

*N.Y. Times Co. v. Tasini*,
533 U.S. 483 (2001) ................................................................................... 12

*Nicklen v. Sinclair Broadcast Group, Inc., et al.*,
2021 WL 3239510 (S.D.N.Y. July 30, 2021) .................................................. iv

*Perfect 10 v. Google, Inc.*,
    416 F. Supp. 2d 828 (C.D. Cal. 2006) ...................................................................... 7

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) ................................................................... *passim*

*Range Rd. Music, Inc. v. E. Coast Foods, Inc.*,
    668 F.3d 1148 (9th Cir. 2012) ...................................................................... 4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ................................................. 3

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ...................................................................... 5

*Texaco, Inc. v. Ponsoldt*,
    939 F.2d 794 (9th Cir. 1991) ....................................................................... 3

**STATUTES**

17 U.S.C. § 101 ........................................................................................... 5, 10

17 U.S.C. § 106 ................................................................................................ 4

17 U.S.C. § 106(5) ..................................................................................... 1, 4, 9

**RULES**

Federal Rule of Civil Procedure

    Rule 12(b)(6) ........................................................................................... 3, 9

## SUMMARY OF ARGUMENT

Defendant Instagram, LLC's motion to dismiss (the "Motion") Plaintiffs' Amended Complaint (the "AC") does not challenge the sufficiency of Plaintiffs' claims or show why the factual allegations make dismissal premature in an otherwise undeveloped record. The AC establishes that there is a clear conflict in Instagram's instruction and warning that embedders (such as BuzzFeed or Time) need to obtain permission from the copyright holder for embedding a photo consistent with Instagram's Terms of Use & Platform Policy (which does not contemplate or refer to any of the principles found in the "Server Test"[1]); that the Copyright Act does not predicate the infringement of a copyright holder's exclusive "display right" upon the alleged infringer's possession of a copy of the work; that no court has applied the Server Test beyond search engine cases; and that no court has applied the Server Test to a social media platform that is alleged to encourage website publishers to embed copyrighted materials. *See, e.g., Hunley v. BuzzFeed, Inc.,* No. 1:20-CV-08844-ALC, 2021 WL 4482101, at *4 (S.D.N.Y. Sept. 30, 2021); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162 (N.D. Cal. 2019); *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585 (S.D.N.Y. 2018); *Nicklen v. Sinclair Broadcast Group, Inc., et al.*, 2021 WL 3239510 (S.D.N.Y. July 30, 2021).

Critically, the Server Test's principals are factually and logically disconnected from the lack of requirement of a possession of a copy of a copyrighted work as found in the clear, plain statutory text of the Copyright Act for the display right, which has the equal force as all the bundles of rights including the public performance right analyzed in *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014). The legislative history of the Copyright Act for the "display" right indisputably is consistent that having possession of copy of the work is not a prerequiste to infringing the display right of that work. Finally, this case is distinguishable from *Perfect 10* as the court did not take into account the public viewer's perception of the work and did not address that possession of a copy of the work under language of the Copyright Act is unnecessary to trigger an infringment of the display right. Plaintiffs have sufficiently plead a prima facie case of copyright infringement and should be permitted to proceed with discovery.

---

[1] *Perfect 10, Inc. v. Amazon.Com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).

## I. INTRODUCTION

Instagram should not be permitted to avoid liability for its alleged conduct of encouraging, assisting, and facilitating third parties' use of Instagram's "embedding" tool to cause the unauthorized display of Instagram users' copyrighted works onto third-party publishers' websites. Viewing the facts set forth in the AC in the light most favorable to them, Plaintiffs have plausibly alleged that when a third-party website publisher embeds copyrighted works from Instagram without authorization intending to display the copyrighted photo to that website's viewers, Instagram participates in the violation of Plaintiffs' display right. Instagram does not challenge the sufficiency of the allegations underlying Plaintiffs' claims, nor does it suggest that secondary liability does not exist for those who, like Instagram, facilitate the misappropriation of intellectual property rights. Rather, the sole basis for its second Motion lies in its misguided and overreaching reliance on, and misapplication of, and expansion of the so-called "Server Test" set forth in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ("*Perfect 10*"), a case that was decided three years before Instagram launched in 2010 and before the embed tool was created as "a behind the scenes means or device" that causes a display of photos.

Dismissal here would allow factual disputes to be construed in Instagram's favor and endorse the tech industry giant for: (1) taking contradictory public positions related to embedding copyrighted content without permission by third parties which, at this pre-discovery stage of the case, improperly gives Instagram – and not Plaintiffs – the benefit of the doubt as to this fact issue; (2) ignoring the fact that in Section 106(5) of the Copyright Act, its legislative history, or in any case in which the statute is litigation, is a display right infringement predicated on the infringing party's possession of a copy of the work, meaning that an embedding party's possession of a work is immaterial to their accomplishing the infringement; and (3) improperly expanding the Server Test beyond its traditional application to the automated, utilitarian showing of copyrighted works in search engine results to now apply to online media companies intentionally embedding copyrighted works to entertain their readers and increase revenue by using pirated copyrighted content rather than pay for licensing fees.

1    In short, the Terms of Use/Platform policy (¶67)[2], public admonitions to embedders, the

2    lack of possession of a work requirement in the Copyright Act plain language and the viewer's

3    perspective are all fact issues that defeat the Motion and the application of the Server Test.

4    Accordingly, the Motion should be denied.

## II.    STATEMENT OF FACTS

6    Plaintiffs filed this class action on behalf of themselves and other similarly situated

7    persons and entities whose registered copyright works were uploaded to Instagram and

8    subsequently caused to be displayed on third-party website publishers without their permission

9    using Instagram's embedding tool to cause each display. ¶88. Plaintiffs allege claims for

10   Inducement of Copyright Infringement, Contributory Copyright Infringement, and Vicarious

11   Copyright Infringement. ¶¶94-121.

12   Plaintiffs' well-pled AC alleges facts that each Plaintiff owns validly registered photos

13   that were posted to their respective Instagram accounts and at some point, those photos were

14   separately embedded by Time.com and Buzzfeed.com from Instagram without authorization from

15   Plaintiffs, thereby violating the display right. ¶¶1-11. While the third-party website's acts are

16   wrongful as alleged, this case solely seeks to expose the core root of the problem: Instagram itself

17   as secondary infringers. Plaintiffs further allege that Instagram created and encouraged the use of

18   its embedding tool to generate significant revenue. ¶1. Instagram encouraged copyright holders to

19   publish their valuable copyrighted works on Instagram (we respect copyright!) and intended for

20   third party publisher websites to use the embedding tool to display copyrighted works without

21   permission from their holders, or from Instagram itself. ¶¶61-63. In other words, Instagram

22   encouraged its users such as Plaintiffs to upload their photos to Instagram's servers and at the

23   same time Instagram regularly and systematically solicited third party website publishers to

24   embed those images, thereby infringing each copyright holder's exclusive display right. ¶8.

25   Only in June 2020, after a seven-year period of reckless disregard for copyright owners or

26   operating in a gray area to its advantage, did Instagram publicly admit that third parties [always

27

28   [2] All references hereafter to "¶ __" are to paragraphs of the Amended Complaint ("AC") ECF No.
     28.

had since 2013] required a license or permission from copyright holders to embed copyrighted works. ¶7. Nonetheless, at all relevant times, Instagram also failed to provide copyright holders any means or tools to identify or search for potential infringements of their works facilitated by the embedding tool. ¶¶9-10, 70. Instagram's actions secondarily violated Plaintiffs' exclusive display rights, for Instagram's financial benefit, and allowed third party publishers to freely embed copyrighted works onto their websites without paying licensing fees or obtaining the requisite permission from the holder or Instagram. ¶¶5, 69.

Instagram also intentionally and systematically handled, controlled, and used valuable copyrighted works with the intent and knowledge that third party website publishers were embedding those works without ever obtaining a license from the copyright owners, which in turn created significant revenue for Instagram arising from the known infringing activity of third parties. *Id*. The causes of action for secondary liability are properly alleged against Instagram and the Motion should accordingly be denied.

## III.    STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is properly granted only where the complaint fails to assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (plausibility standard does not require "the who, what, when, where and how of the misconduct alleged."). Nor is "[t]he standard at this stage...that plaintiff's explanation must be true or even probable." *Starr v. Baca*, 652 F.3d 1202, 1216-17 (9th Cir. 2011). Claims have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* at 556).

On a Rule 12(b)(6) motion, courts are to accept well pled factual allegations as true, drawing all reasonable inferences in the favor of the nonmoving party. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). If the Court grants a motion to dismiss, but the complaint can be amended, the Court should grant leave to amend. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798 (9th Cir. 1991).

1      Plaintiffs have properly alleged the requisite primary copyright infringements. "To

2   establish a prima facie case of copyright infringement, a plaintiff must demonstrate (1) ownership

3   of a valid copyright, and (2) copying of constituent elements of the work that are original."

4   *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012). Allegations

5   must include "(1) which original works are the subject of the copyright claim; (2) that plaintiff

6   owns the copyrights in those works; (3) that the copyrights have been registered in accordance

7   with the statute; and (4) 'by what acts during what time' the defendant infringed the copyright."

8   *Carell v. Case Shubert*, 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000) (quoting *Kelly v. L.L. Cool J.*,

9   145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994)). Plaintiffs have pled all

10  necessary elements to establish an underlying copyright infringement claim against BuzzFeed and

11  Time. ¶¶94-121. As explained below, the secondary liability allegations are sufficient as well.

12  **IV.     ARGUMENT**

13      Plaintiffs plausibly plead that each of the third-party publishers such as Time and

14  BuzzFeed displayed Plaintiffs' copyrighted photographs in violation of the Copyright Act.

15  Section 106(5) of the Copyright Act (the "Act") grants copyright owners the exclusive public

16  display right and control of the economic value of their work. *Id.* "Public display includes

17  'show[ing] a copy of [a work], either directly or by means of a film, slide, television image, **or**

18  **any other device or process**.' *Id.* § 101." *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d

19  640, 652 (S.D.N.Y. 2013), *aff'd*, 910 F.3d 649 (2d Cir. 2018) (emphasis added).

20      Plaintiffs establish *prima facie* copyright infringement based on the presumption of

21  ownership of validly registered copyrighted photographs and BuzzFeed and Time's unauthorized

22  displays of these copyrighted works. ¶¶12-13, 94-121. "The owner of a copyright has the

23  exclusive right to – or to license others to – reproduce, perform publicly, **display** publicly,

24  prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC*

25  *v. Doe 3*, 604 F.3d 110, 117 (2d Cir.2010) (citing 17 U.S.C. § 106); *see also American*

26  *Broadcasting Companies, Inc. v. Aereo, Inc.*, 573 U.S. 431 (2014);[3] *Sybersound Records, Inc. v.*

27  _____

28  [3] Despite technological complexity concerning the "behind-the-scenes" delivery of images, a
    defendant violates the exclusive right to "show [an audiovisual work's] images in any sequence,"

1  *UAV Corp.*, 517 F.3d 1137, 1145 fn. 3 (9th Cir. 2008). Plaintiffs thus satisfy all requirements for

2  establishing primary copyright violations of Primary Infringers.

3     Unsurprisingly, Instagram does not challenge the sufficiency of the AC's allegations in

4  this regard. Rather, its entire argument is founded on a rights-grabbing expansion and

5  misapplication of the Server Test to facts that do not apply here or are in dispute. Instagram

6  makes no effort to explain why the alleged facts support dismissal, essentially arguing that the

7  facts do not matter because of the Server Test. Courts in the Ninth Circuit and others have

8  rightfully either been skeptical of endorsing an expansion of the Server Test beyond search

9  engines or outright rejected its application for embedded copyrighted works for social media

10  platforms. This is because expanding the Server Test, already widely viewed as a "rights

11  grabbing" legal machination, beyond its current confines conflicts with the plain statutory

12  language and legislative objective of the Copyright Act, leading to inequitable results, and a

13  violation of both the letter and the spirit of the Act.

14     Plaintiffs do not attempt to overrule the Server Test. Rather, they seek an outcome

15  consistent with the Copyright Act wherein the Server Test remains limited to its historic search

16  engine context and Instagram is held to an equitable standard when it comes to the rights of its

17  users and embedders. To do otherwise would essentially approve Instagram's conduct of taking

18  contradictory positions, thereby improperly robbing Plaintiffs from the benefit of the doubt on

19  factual disputes at the pleading stage.

20  **A.     The Facts Alleged in The AC Make the Server Test Inapplicable To This Case**

21     "All theories of secondary liability for copyright and trademark infringement require some

22  underlying direct infringement by a third party." *Louis Vuitton Malletier, S.A. v. Akanoc*

23  *Solutions, Inc.*, 591 F.Supp.2d 1098, 1104 (N.D. Cal. 2008). Despite it being facially apparent

24  from the AC that Plaintiffs' copyrights were publicly displayed and shown by third parties

25  publishers without authorization or a license, and that Instagram provided the "means or device"

26  by which such infringement would occur, thereby participating in the infringements, Instagram

27

28  because "whether Aereo transmits from the same or separate copies, it ... shows the same images
   and makes audible the same sound." **To "show a copy" is to display it**. *Am. Broad. Companies,*
   *Inc. v. Aereo, Inc.*, 573 U.S. 431, 441-48 (2014), citing 17 U.S.C. § 101.

PLAINTIFFS' OPPOS. TO MOTION TO DISMISS          CASE NO. 3:21-CV-03778-CRB

nevertheless asks this Court to dismiss this case by construing facts in dispute in Instagram's favor, not Plaintiffs. Instagram maintains that this case is solely about the "embedding process" and impliedly suggests that none of the other facts of the case are relevant for determining application of the Server Test such as what Instagram's Terms of Use state (which are a contract between Plaintiff and Instagram) or Instagram's public instructions to third party embedders such as BuzzFeed (to obtain all necessary rights based on the Platform Policy) (AC at ¶67), or the perspective of the viewer (who sees the copyrighted work the same regardless of where a copy of the work is stored), or even the fact that BuzzFeed and Facebook *may actually share a server.*[4] Despite Instagram's insistence to the contrary, the facts do matter here.

Instagram wholly relies on *Perfect 10*'s Server Test in asking this Court to conclude that BuzzFeed and Time's conduct was protected because each did not directly possess a copy of the file of Plaintiffs' photos when using Instagram's embedding tool to display Plaintiffs' copyrighted photos on their websites without permission. However, the Ninth Circuit has not drawn a bright line, and a closer reading of *Perfect 10* supports a narrower application here to the facts as alleged, especially given the contradictions in Instagram's Terms of Use/Platform Policy and public instructions to embedders.

In *Perfect 10*, the Ninth Circuit considered a claim of direct infringement of the display right against Google based on the operation of Google Image Search, which is essentially a search engine for photos that are displayed on third party websites. Google used "in-line linking" to display full-size, infringing copies of photos in its search results that were sourced from third-party websites where possession of copies of the photos were physically stored. *Perfect 10*, 508 F.3d at 1155-56. Although Google did not have possession of a copy of the file of the photo itself, the HTML code on Google's webpage directed the user's web browser to retrieve a display of the photo from a third-party site and showed those photos in the user's browser window. *Id.* at 1156. From a user's perspective, the "window appear[ed] to be filled with a single integrated presentation." In actuality, however, the window displayed a photo that was hosted on a third-

---

[4] *See* https://www.vox.com/2015/3/24/11560666/jonah-peretti-explains-why-buzzfeed-is-happy-to-cut-a-theoretical.

1    party website, framed by content from Google's own website. *Id.*

2         Under these facts, the Ninth Circuit held that *Perfect 10* made a "prima facie case that

3    Google's communication of its stored thumbnail images directly infringes Perfect 10's display

4    right," but that Google did not display the images at issue because its computers "d[id] not store

5    the photographic images" themselves. *Id.* at 1160. With no attempt to square its reasoning with

6    the Copyright Act's plain language reflecting the original intent of Congress, the Ninth Circuit

7    found that Google's use of HTML instructions to "direct a user's browser to a website publisher's

8    computer that stores the full-size photographic image" was "not equivalent to showing a copy,"

9    even if the image appeared to the user as part of the Google website. *Id.* at 1161.

10        *Perfect 10's* reasoning was highly fact-driven and inapplicable here with regard to

11   Instagram, a social media photo sharing platform which did not exist in 2007. In *Perfect 10*, the

12   technology at issue was the operation of a search engine (i.e., online library of copyrighted

13   works), the express purpose the Court described as facilitating access and directing users to other

14   locations on the Internet. In the underlying district court opinion, Google Image Search operated

15   "[m]erely to index the web so that users can more readily find the information they seek," it

16   "should not constitute direct infringement." *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828, 844

17   (C.D. Cal. 2006), *aff'd in relevant part sub nom.*, *Perfect 10*, 508 F.3d 1146; *see also Perfect 10*,

18   508 F.3d at 1154 (describing the case as involving "efforts to stop an Internet search engine from

19   facilitating access to infringing images"). As the District Court viewed it, application of a "Server

20   Test" in that context would "maintain […], however uneasily, the delicate balance for which

21   copyright law strives—i.e., between encouraging the creation of creative works and encouraging

22   the dissemination of information." *Perfect 10*, 416 F. Supp. 2d at 844.

23        The *Perfect 10* district court implied that its endorsement of the Server Test was a policy

24   judgment and did not hold that the test was appropriate for the facts of every case. In adopting the

25   test, the District Court expressly acknowledged that application of the test was "**susceptible to**

26   **extreme or dubious results**." *Perfect 10 (Google)* at 839. Significantly, the Court acknowledged

27   that Google and Amazon did not host the offending material, they merely operated search engines

28   whereby Internet users could search for content and potentially access third party websites of

1    entities which themselves were misappropriating the copyrighted material. *Id.*

2    Importantly, the Server Test, as applied in *Perfect 10,* was not used as the means by which

3    secondary liability (*i.e.,* the liability sought to be imposed by Plaintiffs in the case at bar) could be

4    avoided. Rather, there, direct infringement was "undisputed." *Perfect 10*, 508 F.3d at 1169-70.

5    Accordingly, the infringement question presented in *Perfect 10* concerned matters not raised in

6    Instagram's Motion, namely whether there was contributory or vicarious infringement. Instagram

7    does not challenge these allegations because Plaintiffs have sufficiently pled secondary liability

8    arising from Instagram's conduct. As discussed below, BuzzFeed is alleged to have committed

9    direct copyright infringement violating Hunley's display right in a case still pending in the

10   Southern District of New York, where the court declined to dismiss the case based on the Server

11   Test's inapplicability in the Second Circuit.

12   Instagram does not function like a search engine such as Google. The primary

13   infringements alleged here did not involve automated, algorithmic cataloging of content stored on

14   third party servers for the express purpose of facilitating revenue generating traffic; they were the

15   product of individual, intentional acts of website publishers who sought out each photo's unique

16   embed code and copy/pasted the code into their websites' content management system for the

17   explicit purpose of showing the Plaintiffs' copyrighted content to readers of posts or articles

18   found on their commercial websites. Instagram was actively involved in this process because its

19   servers housed that copyrighted content, its embedding technology facilitated the contents'

20   display on third party websites, and it solicited this very behavior from these publishing outlets.

21   *See* AC. ¶¶38-86.

22   Beyond technology or functionality, the perception of the viewer is relevant when

23   contemplating the difference between embedding a protected work into a website post or article

24   and showing search results (based on key words or photographic search technology) into a search

25   engine result. An image embedded into a list of search engine results is tiny, typically a

26   "thumbnail" sized version of the image, which is generally unsuitable for any purpose beyond

27   guiding the viewer to navigate their web browser to the place the image is actually hosted so that

28   they may have a closer look at the full size image. An image embedded into a post or article from

1   somewhere like Instagram is generally displayed in full within the post or article just like any

2   other visual aid it may employ. Viewers need not navigate elsewhere on the internet to properly

3   experience the full size image.

4       In sum, *Perfect 10* is factually distinguishable and different from this case and the Server

5   Test should not be expanded beyond the facts of *Perfect 10*. Instagram's Terms of Use is factually

6   at issue (Plaintiff is a party to the Terms of Use) as well its public admissions regarding

7   embedding (BuzzFeed is a party to Instagram's platform policy), whether Instagram shares a

8   server with a number of third party websites, including BuzzFeed, and why the viewer's

9   perspective is factually relevant as alleged. Applying the Server Test results in a "dubious or

10  susceptible" outcome outside of search engines, giving Instagram a windfall of valuable content

11  that Instagram intended third party website publishers to share the benefit of Plaintiff's photos.

12      **B.**  **Possession of a Copyrighted Work is Not a Prerequisite for Finding**
        **Infringement of a "Display Right" as Other Courts Have Declined Applying**
13      **the Server Test Under Substantially Similar Facts.**

14      The Copyright Act does not require an infringer to be in possession of a copy of a

15  protected work to accomplish its infringement of that work. Neither the word nor the concept of

16  "possession" is found in 17 U.S.C. § 106(5), which defines the copyright holder's exclusive right

17  of display. Finding this to be a fatal flaw in the Server Test's logic, other courts, when presented

18  with facts similar to this case, have distinguished *Perfect 10* on such grounds. This Court should

19  do the same.

20      On September 30, 2021, the *Hunley* court denied BuzzFeed's 12(b)(6) motion that

21  embedding Hunley's photo from Instagram was fair use under the Server Test, the very same

22  photo in this case. *Hunley v. BuzzFeed, Inc.*, No. 1:20-CV-08844-ALC, 2021 WL 4482101, at *4,

23  n.4 (S.D.N.Y. Sept. 30, 2021) (denying that embedded photographs cannot be the subject of

24  copyright infringement claims under a fair use defense that the Server Test applies)[5]

25      In July 2021, Judge Rakoff of the Southern District of New York, issued an opinion and

26  order denying Defendant Sinclair's motion to dismiss a case addressing a substantially similar

---

[5] Plaintiffs acknowledge that the Server Test has never been applied in the Second Circuit and also acknowledge that Instagram's Terms of Use require all copyright infringement claims be filed in federal court in California.

1  issue as to whether embedding a copyrighted video from Facebook violated the display right

2  under the Copyright Act. *See Nicklen v. Sinclair Broadcast Group, Inc., et al.,* 2021 WL 3239510

3  (S.D. N.Y. July 30, 2021). The court found that the defendants were plausibly in violation of

4  Plaintiff Nicklen's display right as alleged in his complaint for their infringing acts of using

5  Facebook's embedding tool to publish a copyrighted video on numerous third-party websites

6  without authorization from the copyright holder. *Id.* at *7. Defendants argued, under the Server

7  Test born in *Perfect 10*, that because each website did not store or possess the video file on any of

8  the Sinclair Defendants' servers, but instead only used the Facebook embed tool, they did not

9  "display" the video within the meaning of the Copyright Act. *Id.* at *4. The court disagreed, in

10  pointed fashion. Judge Rakoff ruled that under the plain language of the Act, "[t]o 'display' a

11  work means to show a copy of it, either directly or by means of a film, slide, television image, or

12  any other device or process or, in the case of a motion picture or other audiovisual work, to show

13  individual images nonsequentially." *Id.* at *3, citing 17 U.S.C. § 101. The *Nicklen* court

14  concluded that under a plain, textual analysis, "a defendant violates an author's exclusive right to

15  display an audiovisual work publicly when the defendant without authorization causes a copy of

16  the work, or individual images of the work, to be seen – whether directly or by means of any

17  device or process known in 1976 or developed thereafter," and held that the statute was and

18  should be *technologically neutral.* Under this reasoning, "[t]he Copyright Act's text and history

19  establish that embedding a video on a website 'displays' that video, because to embed a video is

20  to show the video or individual images of the video nonsequentially by means of a device or

21  process." *Id.*

22     The *Nicklen* court found the Server Test to be contrary to the text and legislative history of

23  the Copyright Act for a number of powerfully persuasive reasons related to a social media

24  platform, including "Congress's endeavor to ensure that the full 'bundle' of exclusive rights will

25  address evolving modes of exploitation of works." *Id.* (citation omitted). Notable, however, were

26  the distinguishing facts that the court observed should limit the *Perfect 10* holding to search

27  engines: "(1) the defendant operated a search engine and (2) the copyrighted images were

28  displayed only if a user clicked on a link." *Id.* (citing *Goldman v. Breitbart News Network, LLC,*

- 10 -

302 F. Supp. 3d 585, 595 (S.D.N.Y. 2018) (distinguishing *Perfect 10* on these grounds in which a photo of football star Tom Brady was embedded from Twitter onto numerous media websites and the Server Test was not applied to embedding)). "An individual still image from the Video awaits Sinclair readers whether they click the image to play the video or not. Thus, *Perfect 10*'s test is a poor fit for this case, and the Court declines to adopt it." *Id.* Applying the Server Test to absolve Instagram here, as with *Nicklen* regarding Instagram's parent, Facebook (which uses the same embed code technology), would wholly undermine the exclusive display right and expand the Server Test to social media platforms beyond search engines.

Recently, a court in this district found defendant's reliance on *Perfect 10* problematic since they could not cite any "case applying the *Perfect 10* Server Test outside of the context of search engines" such as Google. *See Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1172 (N.D. Cal. 2019) (Orrick, J.). This is because there are no cases. Instagram would be the first. In *Leader's Institute, LLC v. Jackson*, 2017 WL 5629514 (N.D. TX. Nov. 22, 2017), the court distinguished *Perfect 10* on nearly identical grounds. The court observed that displaying copyrighted works online through a method similar to embedding where users would visibly see copyrighted material on the infringers' web domain, was substantively different from a mere hyperlink that required additional user action to access and view the copyrighted work, and declined to expand the Server Test. *Leader's Institute* at *11.

In another similar recent case involving a social media platform and website publishers, *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d at 595, the court directly addressed the embed question in a copyright holder's favor by holding, "when defendants caused the embedded Tweets to appear on their websites, their actions violated plaintiff's exclusive [copyright] display right; the fact that the image was hosted on a server owned and operated by an unrelated third party (Twitter) does not shield them [the Primary Infringers] from this result." *Id.* at 586. "Most importantly, nowhere in the plain textual reading of the Copyright Act is "**possession of** work" mentioned – contrary to the "Server Test" – "as a prerequisite for infringement." *Id.* at 592. As *Goldman* held, neither "the text or purpose of the Copyright Act suggest[s] that physical possession of an image is a necessary element to its display for purposes

1    of the Act." *Id*. at 594.[6] While the Ninth Circuit still acknowledges the existence of the Server
2    Test, the recent case referenced by this court in the order [ECF 27] does not appear to apply the
3    Server Test in the context of embedding within social media or even a search engine, but instead
4    dealt with *de minimis* infringement and direct display of a photo on a pinpoint site address. *Bell v.*
5    *Wilmott Storage Servs., LLC*, 12 F.4th 1065, 1073 (9th Cir. 2021) (Finding that even though a
6    member of the public could not access the photo by simply visiting Defendant's website,
7    Defendant's server was continuously transmitting the image to a specific pinpoint address not
8    easily searchable). That court only mentioned that the Server Test exists but not for the reasons
9    that apply to Instagram and embedding.

10        What is clear from these decisions is that the Ninth Circuit's 2007 Server Test was a
11   policy-driven and fact-driven doctrine not found in the plain text or the logic of the Copyright Act
12   and only should be narrowly limited to its facts. Because possession of a copy is not a
13   requirement under the Act or found in the legislative history, there is no sound legal, factual, or
14   policy justification for accepting Instagram's invitation to expand the Server Test outside of
15   search engines like Google. Instagram's Motion presents no authority or factual excuse for such
16   an expansion. Accordingly, the Motion should be denied.

17        **C.      The Server Test's Evisceration of the Display Right is Inconsistent with the US**
18                **Supreme Court's Intervening Decision in *Aereo* for The Performance Right**

19        The Ninth Circuit's 2007 decision in *Perfect 10* is not only inconsistent with the plain
20   language of the Copyright Act, and inapplicable to the facts of this case, but it also runs contrary
21   to subsequent Supreme Court authority that rejected the very sort of technical distinctions that
22   underpinned the Server Test in the first instance or the "behind the scenes" technicalities. In
23   *American Broadcasting Cos. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), the Court considered claims
24   under the Copyright Act's public performance right, which has the same, equal value and weight

---

[6]   The *Goldman* reading is consistent with the Supreme Court's admonition that, to determine
whether a work is infringed under the Copyright Act, a court must "focus on the [work] as presented
to, and perceptible by" the public. *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 499 (2001). For purposes
of the display right, then, it is the viewer's experience that matters, not the internal mechanics of
how the content is stored or retrieved. Here, Instagram ignores the factual allegation that the public
viewer does matter.

1    as the display and is analogously interchangeable in the bundle of rights under the Act. In *Aereo*,

2    an Internet-based re-transmitter of over-the-air television signals argued that it did not "perform

3    the copyrighted work publicly" because each transmission came from a miniature antenna

4    assigned to each individual user and, therefore, was a "private" rather than "public" performance.

5    *Id*. at 2507-08. The Court wholly rejected that argument, noting that the technical difference

6    **"means nothing to the subscriber. It means nothing to the broadcaster. We do not see how**

7    **this single difference, invisible to subscriber and broadcaster alike, could transform a**

8    **system" from infringing to non-infringing**. *Id*. at 2507 (emphasis added). "Viewed in terms of

9    Congress' regulatory objectives," the Court asked rhetorically, "*why should any of these*

10   *technological differences matter?*" *Id*. at 2508. *Aereo* therefore provides that it is a practical,

11   functional perspective, and not hyper technicalities, that determine whether a particular mode of

12   content delivery is infringing or not. The performance right could easily be exchanged out for the

13   display right here. To hold otherwise would ignore that the bundle of rights all operate in

14   conjunction with each other. If this case involved streaming videos (similar to the broadcasting of

15   content occurring in *Aereo* using transmission came from a miniature antenna for each viewer)

16   rather than still photographic images, Instagram's embedding tool for third party website

17   publishers to "perform" those streaming videos would be infringements under the Act.

18          *Perfect 10* and its Server Test are inconsistent with the holding of *Aereo* as the display

19   right and the performance are equal under the Act. Where a social media platform purposely

20   constructs its technology to allow and encourage third party website publishers to show a

21   copyrighted photo as part of that website's article -- whether through HTML instructions, embed

22   code, magic wizard or fairy dust, or "any other device or process" that has not yet been invented

23   by ingenious and profit-driven tech companies like Facebook or Instagram – it is the website

24   publisher's actions and ultimately the reasonable viewer's perception that matters factually,

25   regardless of the physical location of the photo being displayed or whether Instagram or the

26   website publisher possesses a copy of the photo. Without necessary permissions from the

27   copyright holder, Instagram's embed tool was built to infringe and represents a "rights grab" that

28   should be trumped by the Copyright Act's exclusive bundle of rights and the analogous reasoning

1  found in *Aereo*. Finally, the Copyright Act, its legislative history and congressional intent, read
2  along with the reasoning in *Perfect 10* and *Aereo*'s performance right analysis, create at worst,
3  ambiguities related to whether the performance right holds the same weight and logically the
4  same analysis as the display right, and at best should be resolved in favor of Plaintiff copyright
5  holders at this stage to better develop a record for a case that is destined for appeal regardless of
6  how the Court decides.

7  **V.    CONCLUSION**

8        Instagram's Motion provides no credible support in fact, law, or policy argument to
9  maintain that the Server Test applies to embedding a copyright holder's photo from Instagram
10  onto a third-party website such as BuzzFeed.com. Nowhere in the Copyright Act's plain text,
11  legislative history, and congressional intent is possession of a copyrighted work by an infringer a
12  necessary requirement to trigger the display right. Instagram's expansion of the Server Test
13  would lead to absurd, dubious, susceptible, and inequitable results, where the display right would
14  become extinguished, neutering one of the Act's exclusive rights. Enablers of infringements, such
15  as Instagram, and the third-party online website publishers benefitting from the value of
16  embedding, will continue to reap the value of copyrighted photos by merely providing a hyper-
17  technical liability shelter of judicial creation that should only be limited to search engines such as
18  Google. Visually, functionally, and practically, there is no difference whatsoever from the
19  viewer's perspective between the embedded photos on BuzzFeed or Time's websites and a
20  scenario where the very same website has physical possession of a copy of the photo's file for
21  display of the same photo. An ordinary Internet viewer does not know or care about the technical
22  differences behind the scenes. And neither should this Court.

23        Plaintiffs respectfully submit that the Court should deny the Motion. Alternatively, should
24  the Court grant some or all of the Motion, Plaintiffs request leave to amend.

25  Dated: December 17, 2021                    Respectfully submitted,

26                                              C ERA LLP

27                                              By: /s/ Solomon B. Cera
28                                              Solomon B. Cera

Pamela A. Markert
595 Market Street, Suite 1350
San Francisco, CA 94105
Telephone: (415) 977-2230
Email: scera@cerallp.com
Email: pmarkert@cerallp.com

**DUNCAN FIRM, P.A.**
James H. Bartolomei III
809 W. 3rd Street
Little Rock, AR 72201
Telephone: (501) 228-7600
Email: james@duncanfirm.com

**HOBEN LAW**
Bryan D. Hoben (admitted *pro hac vice*)
1112 Main Street
Peekskill, NY 10566
Telephone: (347) 855-4008
Email: bryan@hobenlaw.com

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd Friedman
Adrian R. Bacon
21550 Oxnard Street, Suite 780
Woodland Hills, CA 91367
Telephone: (877) 206-4741
Email: tfriedman@toddflaw.com
Email: abacon@toddflaw.com

*Attorneys for Plaintiffs and the Proposed Class*

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-1(i)(3) of the Northern District of California, regarding signatures, I, Joseph C. Gratz, attest that concurrence in the filing of this document has been obtained.

Dated:  January 14, 2022                                            */s/ Joseph C. Gratz*

DECLARATION OF ANNIE A. LEE IN SUPPORT OF REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT / CASE NO. 3:21-CV-03778-CRB

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on January 14, 2022 the within document was filed with the Clerk of the

3

Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

5

*/s/ Joseph C. Gratz*
JOSEPH C. GRATZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF ANNIE A. LEE IN SUPPORT OF REPLY IN SUPPORT OF MOTION TO DISMISS
FIRST AMENDED COMPLAINT / CASE NO. 3:21-CV-03778-CRB